## HOME NATIONAL BANK v. HILL.

[No. 20,519.   Filed June 29, 1905.]

1. APPEAL AND ERROR.—*Demurrer to Answer.*—*Exception to Conclusions of Law.*—Where the special findings contain the same facts that are alleged in an answer, the exception to the conclusions of law thereon presents the same question on appeal as the demurrer to such answer.   p. 227.

2. TRIAL.—*Bills and Notes.*—*Non est Factum.*—*Burden of Proof.* —The burden of proof, in an action on a note wherein the defendant answers *non est factum,* is upon the plaintiff.   p. 231.

3. BILLS AND NOTES.—*Execution.*—*Fraud.*—*Bona Fide Holder.*— A negotiable note signed by defendant, without negligence, by means of a fraudulent trick or artifice, is not enforceable by an innocent holder for value.   p. 231.

4. SAME.—*Execution.*—*Negligence.*—*Questions for Jury.*—What is negligence in the signing of a note is usually a question of fact for the jury.   p. 234.

5. SAME.—*Execution.*—*Negligence.*—Where an attorney presented to the defendant a legal instrument, which defendant read, with a proper explanation of its meaning and use, and by a fraudulent artifice such attorney procured defendant's signature to some blank negotiable notes, the defendant believing that he was executing such legal instrument, the fact that defendant's daughter was near and that he could have called her also to read, does not constitute negligence on defendant's part.   p. 235.

From Boone Circuit Court; *Joseph M. Rabb,* Special Judge.

Action by the Home National Bank against John C. Hill. From a judgment for defendant, plaintiff appeals.   Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590.   *Affirmed.*

*T. J. Terhune* and *Ira M. Sharp,* for appellant.
*Higgins & Holloman,* for appellee.

JORDAN, J.—Appellant, plaintiff below, as a *bona fide* holder of a promissory note payable at the Home National Bank of Thorntown, Indiana, sued thereon to recover against the defendant, John C. Hill, appellee herein. The latter answered the complaint in three paragraphs, the first of which was subsequently withdrawn. The second was a verified plea of *non est factum.* By the third paragraph he set up certain facts disclosing the method by which his signature to the note in suit was obtained by Joseph D. Cunningham. Appellant's demurrer to the third paragraph of the answer was overruled. Reply: (1) General denial; (2) that appellant had no notice of the fraudulent manner in which the signature of appellee to the note was procured, but took the same, in the usual course of business, for a valuable consideration, etc. The trial court made a special finding of facts, and stated a conclusion of law thereon, to the effect that appellant was not entitled to recover on the note, to which conclusion it excepted. Final judgment was rendered in favor of appellee.

The alleged errors upon which appellant relies for a reversal are (1) overruling its demurrer to the third paragraph of the answer; (2) that the court erred in its conclusion of law on the special finding of facts.

As the facts stated in the findings and those alleged in the third paragraph of the answer are substantially the same, it is not essential, therefore, that we review the sufficiency of the latter paragraph, as the same questions raised by the demurrer thereto are presented by the exception to the conclusion of law on the special findings. *Ray* v. *Baker* (1905), *ante,* 74, and cases cited.

The court finds that the signature of the defendant John C. Hill, appellee herein, was procured to said note under the following circumstances: That long prior to the date of this instrument, Elisha E. Kirk had been duly appointed by the Boone Circuit Court as the guardian of Cornelia M. Robinson, a minor. The defendant Hill was the

surety upon said guardian's bond, and he was also liable as the indorser of a note which had been executed to him by Kirk, the guardian, and by the defendant indorsed to one Burk. The payment of this note had been secured by a certain mortgage executed to the defendant Hill by Kirk. This note and mortgage had been executed and indorsed for the purpose of raising funds for the benefit of the estate of Kirk's ward, and in all matters connected with said guardianship Joseph D. Cunningham had acted as the attorney for said guardian. The fact that he was attorney as above stated was at all times well known to the defendant Hill. After the execution of said note and mortgage and the indorsement of the defendant Hill, Kirk resigned as guardian of his said ward, and left the State of Indiana, and the American Trust Company of Lebanon, Indiana, became his successor. Some few days prior to the date of the note, Cunningham, attorney for the estate of said ward, conceived the design of procuring the signature of the defendant Hill to promissory notes, without the defendant's knowing or understanding that he was signing such notes, and, having this design in view, he informed the defendant that he (Cunningham) was preparing papers, which it would be necessary for the defendant to sign, for the purpose of raising money to pay off said note indorsed by said defendant and for the purpose of procuring a release of the mortgage held by the latter on the lands of said ward. In order to carry out this fraudulent design, Cunningham procured two blank promissory notes of the form used by the plaintiff's bank. These notes appear to have been printed in red ink, were eight inches long by three and one-half inches wide, and were printed on white paper. They had a red line around the border, and had the word "No.," standing for number, printed in red ink within a half inch of the lower left-hand corner of the note. The letters of the note were of the size ordinarily used in printing blank forms of notes. Three lines, indicating the places whereon the

names of makers should be written, at the bottom of the note, were dotted in red ink. Said Cunningham provided himself also with a pretended petition to the circuit court asking the court to grant some kind of an order in behalf of the defendant as surety of Kirk in the matter of said guardianship. This pretended petition was typewritten in black type on ordinary foolscap paper usual for typewriting, with four leaves fastened together at the top, all of which leaves were filled, or nearly so, with typewritten matter. Cunningham took this petition and the blank form of notes to the home of defendant, concealing the notes in his pocket. He presented this petition to the defendant, and represented to him that it was a petition which it was necessary for him to sign in order to procure a settlement of the note which he had indorsed to said Burk, and which, as previously shown, was secured by a mortgage upon the property of the ward, which mortgage was in favor of Hill. The defendant, as the court finds, read the petition in part, sufficiently to know and understand its nature and purport, and after a full explanation upon the part of Cunningham he consented to sign the same. After the defendant Hill had read over the petition and informed himself in reference thereto and had consented to sign it, he handed it to Cunningham to hold while he went to secure a board upon which to rest the paper, or petition, while signing it. After having secured the board, which was in the room where the parties were at the time, he turned again to Cunningham. The latter, while thus having the papers momentarily in his possession, artfully, as the court finds, inserted the two blank notes between the leaves of the printed petition. Having thus inserted the blank notes among the leaves of the papers in such a manner as to conceal all of the printed part of the notes, leaving exposed no part thereof except the lines indicating the spaces where the signatures of the makers should be attached, and that part of the red border of the notes which enclosed the bottom part thereof and the letters "No."

printed in red ink, he (Cunningham) laid his hand upon the petition which had been placed upon the board, pointed out to the defendant Hill the places where he should attach his signature. The defendant understanding and believing that he was attaching his signature to the petition which he had examined and which had been read to him, and not observing any part of said blank notes not exposed to view, and not knowing or understanding that any promissory notes were concealed among the leaves of the petition, wrote his name to the note in suit, and also to another blank note, Cunningham at the time keeping his hand upon said paper, never thereafter allowing the same to come into the possession of the defendant Hill. There was nothing said to Hill, and no suggestions were made to him, about the execution of a promissory note, and he, in attaching his signature to the instrument or note in suit, believed that he was signing the petition aforesaid mentioned, and was not intending at that time or at any other time to sign the instrument sued on as a promissory note. At the time of the transaction in question the defendant was seventy-two years of age, in fairly good health, but his eyesight was imperfect. He was a man of ordinary intelligence, was a farmer, unfamiliar with proceedings in court, could read and write, and there was present in his house at the time a daughter, who was a woman of ordinary intelligence, and who could read and write, but he did not call upon her to assist him in the matter. After the defendant had placed the pretended petition in the hands of Cunningham, as aforesaid stated, he turned away from the latter in going to procure the board upon which to place the papers for his signature, and did not again examine them, or take them in his hand, or read them, or ask to have them read to him. The court finds that, had he again taken possession of the papers after the blank promissory notes had been placed therein by Cunningham, the trick and artifice of the latter would have been exposed to the defendant, and he could have discovered the

existence of the notes. After the defendant had placed his signature to the papers as aforesaid stated, and without any knowledge on his part that he had signed the blank promissory notes, Cunningham took the notes into his possession and subsequently filled one out as a note for $1,000, and wrote his own name above that of the defendant Hill, and in this form took the note to the plaintiff bank, and there discounted it and received thereon the sum of $930. Appellant bank at the time of discounting said note had no knowledge or information of the means employed by Cunningham to procure the signature of appellee to the note, and took the same without notice, express or implied, of any infirmity therein. Defendant received no part of the proceeds of the note, and had no knowledge or notice that the same had been taken to the bank until after the discounting, and in no manner has he ever ratified, approved or confirmed the act of Cunningham in discounting the note. The size, form of, and the manner and color in which the blank notes were printed were such that had the defendant seen the same he could readily have understood that they were blank promissory notes.

Appellee having controverted the execution of the note in suit by a verified plea of *non est factum,* the burden, therefore, of proving its execution rested on appellant. *Fudge* v. *Marquell* (1905), 164 Ind. 447, and cases cited.

The trial court found that the signature of appellee to the note in suit was genuine, but that it was procured under the facts or circumstances disclosed by the special findings. Under the facts found the question with which we have to deal is not merely in respect to the genuineness of appellee's signature. As preliminary to the question herein involved, we may assert that this court has generally gone to the full limits in the enforcement of the well-settled rule which protects or upholds commercial or negotiable paper in the hands of a *bona fide* holder; but

while this is true, nevertheless it has also recognized the fact that there is, and must be, some limit in the application of this rule; or, in other words, that there are cases in which, under the particular facts thereof, even a *bona fide* purchaser or holder must be held to have purchased negotiable paper at his peril. Our decisions firmly adhere to the rule that where one has negligently signed a promissory note negotiable by the law merchant he can not successfully defend against such a note in the hands of a *bona fide* holder, although it was procured from him by the means of fraud, and without any consideration whatever. But in a case where a party not guilty of negligence signs a negotiable note in the belief, induced by fraudulent practices, that it is an instrument or paper of a character altogether different from the one which he intended to sign, then, under the circumstances, such note can not be enforced against him, although it has passed into the hands of a *bona fide* purchaser for value. *Webb* v. *Corbin* (1881), 78 Ind. 403; *Baldwin* v. *Bricker* (1882), 86 Ind. 221; *Mitchell* v. *Tomlinson* (1883), 91 Ind. 167; *Detwiler* v. *Bish* (1873), 44 Ind. 70; *Cline* v. *Guthrie* (1873), 42 Ind. 227, 13 Am. Rep. 357; 4 Am. and Eng. Ency. Law (2d ed.), 326, 327.

To recapitulate the material facts, it may be said to appear that appellee was the surety on the bond of one Kirk, who was the guardian of a certain minor, which guardianship was pending in the Boone Circuit Court. He was also liable as the indorser on a note which was given for the benefit of said estate, and had been indemnified as such indorser by a mortgage executed by the guardian on the property of the ward. Cunningham was the attorney representing the guardian in said trust, which fact at the time of the transaction was well known to appellee. Some time previous thereto Cunningham, it appears, entertained the fraudulent purpose of procuring the signature of appellee to the blank promissory note in question without appellee's

knowing or understanding that he was signing such paper. Appellee was a man about seventy-two years of age, a farmer, of ordinary intelligence, could read and write, but was unfamiliar with proceedings in court. Cunningham, on the day of the transaction, for the purpose of carrying into effect his fraudulent scheme or purpose, procured two blank promissory notes. These he concealed in his pocket, and went to the home of appellee, and there represented to the latter that he was preparing papers for the purpose of raising money to pay the note upon which appellee was indorser, and for the purpose of procuring a release of the indemnifying mortgage held by appellee against the lands of the ward. Cunningham at the time had a petition to be presented to the court asking that an order be made in the matter of said guardianship in behalf of appellee as the surety for the guardian. This petition, it appears, he presented to appellee, and represented that it was necessary for him to sign it in order to secure a settlement of the note which he had indorsed for the guardian. Cunningham read the petition to appellee, and then turned it over to the latter to read for himself, which, as the court finds, he accordingly did, sufficiently at least to ascertain and understand its nature and purport. After a full explanation in respect thereto on the part of Cunningham, appellee consented to sign it, and thereupon returned it to Cunningham, and then went to some part of the room to procure a board upon which to rest the paper while he signed the same. Cunningham, while appellee was absent in search of the board for the purpose in question, "artfully" inserted the two blank notes between the leaves or folds of said printed petition in such a manner as to conceal all of the printed parts thereof, leaving exposed only the lines which were intended for the signatures of the makers, and the letters "No.," for number, printed in red ink. Cunningham, as it appears, put his hand on the paper or petition which had been placed on the board, and then pointed out to appellee

the places where he should sign his name. Appellee being wholly ignorant that any promissory notes were concealed between the leaves of said petition, and believing that he was attaching his name to said petition, signed the notes, one being the note in suit. After appellee had signed them, Cunningham still kept his hand upon said petition, and did not permit it or the blank notes to come into the possession of appellee, and, without any knowledge or consent on the part of the latter that he had signed the blank promissory notes, Cunningham took said blank notes so signed by appellee into his possession, and thereafter filled out one of the blank notes, and converted it into a note for $1,000, signed his name thereto above that of appellee, and then discounted it at appellant bank, as shown by the special findings.

That the facts justify the court's conclusion thereon is beyond successful controversy. It may be said that appellant, under the facts, falls far short of establishing in the eye of the law the execution of the note in suit on the part of appellee. Neither can it be asserted that under the circumstances he negligently signed the note, and that therefore the cause must be ruled by the maxim or principle which affirms that whenever one of two innocent parties must suffer by the acts of the third party, the one must bear the loss who has enabled such third party to occasion or bring the same about. A person, in the absence of negligence or proper precaution, whose signature is obtained to negotiable paper by an artful trick or by the methods employed in this case, is, in a legal sense, no more liable thereon, even in the hands of a *bona fide* holder, than he would be were the note an absolute forgery. *Webb* v. *Corbin, supra.*

As the authorities affirm, it is impossible to lay down a general rule in regard to what acts or conduct on the part of the defendant in a case involving negotiable paper will constitute a negligent signing thereof so as to permit a recovery by a *bona fide* holder. [Neg-

ligence in such a case, as in other cases wherein it is an element, is generally a question for the determination of the court or jury trying the cause upon all of the evidence and circumstances therein. But when a state of facts is established, or is undisputed, then under such circumstances negligence, if involved, becomes a matter or question of law.

In *Baldwin* v. *Bricker, supra,* this court said: "It may be that an illiterate man who is unable to read will, in some cases, be guilty of negligence in not having the paper read to him by one whom he knows to be disinterested; but whether he is so or not must generally be a question for the jury. Mr. Daniel, in speaking of this class of cases, says: 'But in all such cases the question of negligence is difficult of legal solution, and no absolute invariable rule can well be laid down. If the paper be ostensibly read to one who can not himself read, it is still to him a matter that must rest on faith; and if he takes due precaution to ascertain its true character, it would be a great hardship to inflict responsibility upon him which he did not intend to assume. And what is due precaution must be determined by the peculiar circumstances of each case.' 1 Daniel, Neg. Inst., §849."

Appellant's counsel contend that the facts show that appellee was guilty of negligence in signing his name to the paper in dispute. They apparently place much stress upon the fact that he failed or neglected to call upon his daughter, who was present at his home, for assistance in the matter. But the facts are that Cunningham neither said anything nor made any suggestions about signing or executing any promissory note. Appellee at the time believed that he was only signing his name to the petition, and did not intend to sign the note herein involved. In fact, the only paper presented to him for his signature was the petition in controversy. This document he appears to have sufficiently read to enable him to under-

stand that it was of the character and purport as represented by Cunningham. The blank notes were neither a part of, nor in any manner connected with, the petition, but by the means of a deceitful trick or a species of legerdemain on the part of Cunningham blank notes were placed and concealed between the folds or leaves of the petition, and by this method appellee's signature, without his knowledge, was procured to the note in controversy. Or, in other words, he was, through a crafty trick, caused to sign the notes instead of the petition which he intended to sign, and which at the time he supposed he was signing. The latter paper he had read, and was thereby informed in regard to its contents and purpose. Hence, under the circumstances, it was not necessary, as a matter of diligence, for him to invoke the aid of his daughter to read the petition for his benefit. Certainly it can not in reason be asserted that he was guilty of negligence because of the fact alone that he did not read, nor request to have read to him, a paper which was not presented to him for his signature, and one which he did not know was at the time in existence. Under the circumstances surely there is neither reason nor room for asserting that he should either have read the blank notes himself or have procured his daughter to perform this service. There is a material distinction between a case where a person intends to sign a note of the character like the one which he does finally sign, although induced to do so by means of fraud, and a case where a party has no design or intention whatever of signing a promissory note. Cunningham was not a stranger to appellee. He was the attorney and counselor in the matter of the guardianship, in which, as shown, appellee was interested by reason of his being surety on the guardian's bond and indorser upon a note for the benefit of the estate for which he held an indemnity mortgage against the property of the ward. That appellee, under all of the circumstances, should have believed and relied on the statements or representations of

Cunningham in regard to the purpose of the petition which he had agreed to sign, is certainly not unreasonable.

Appellant's contention that appellee did not exercise proper precaution or care in the matter or transaction in question is not sustained by the facts. That Cunningham was enabled to carry off the blank notes after he had obtained appellee's signature thereto, and then convert one of them into a negotiable promissory note, and discount it at appellant's bank, does not, under the facts, appear in any manner to be due to an absence of proper precaution or care on the part of appellee. The following cases, in addition to those heretofore cited, support the doctrine or principle which we affirm and adhere to in this appeal: *First Nat. Bank* v. *Lierman* (1876), 5 Neb. 247; *Green* v. *Wilkie* (1896), 98 Iowa 74, 66 N. W. 1046, 36 L. R. A. 434, 60 Am. St. 184; *Soper* v. *Peck* (1883), 51 Mich. 563, 17 N. W. 57; *Gibbs* v. *Linabury* (1871), 22 Mich. 479, 7 Am. Rep. 675; *Whitney* v. *Snyder* (1870), 2 Lans. (N. Y.) 477; *National Exchange Bank* v. *Veneman* (1887), 43 Hun (N. Y.) 241; *Butler* v. *Carns* (1875), 37 Wis. 61; *Kagel* v. *Totten* (1882), 59 Md. 447; *Trambly* v. *Ricard* (1881), 130 Mass. 259; *Griffiths* v. *Kellogg* (1876), 39 Wis. 290, 20 Am. Rep. 48; *Bowers* v. *Thomas* (1885), 62 Wis. 480, 22 N. W. 710; *Willard* v. *Nelson* (1892), 35 Neb. 651, 53 N. W. 572, 37 Am. St. 455.

It follows that the judgment below is a correct result, and is therefore affirmed.