## FIRST NATIONAL BANK OF SIBLEY, IOWA, v. DOEDEN.

The law of the place where a contract is made and is to be performed governs as to its construction, validity, and enforcement.

A note executed and made payable in Minnesota will not be enforced at the suit of a foreign corporation buying the note, which is, under Laws Minn. 1883, p. 157, c. 114, § 1, void because of the fraud of the payee.

(Opinion filed, August 29, 1907.)

Appeal from Circuit Court, Spink County. Hon. CHARLES S. WHITING, Judge.

Action by the First National Bank of Sibley, Iowa, against George H. Doeden. From a judgment for defendant, plaintiff appeals. Affirmed.

*Sterling & Clark,* for appellant. *E. W. Fiske* and *Wilson & Son,* for respondent.

FULLER, P. J. Appellant, an Iowa banking corporation, brought this action as an indorsee in due course to recover the amount of four promissory notes, each for $300, executed by respondent at his place of residence in the state of Minnesota, where they were all made payable to Charles Peters, or order, with interest from date at the rate of 6 per cent. per annum. Upon the theory that the statute of Minnesota and not the law of the forum should

govern in determining the validity of these notes in the hands of an innocent purchaser for value before maturity, the court permitted respondent to introduce testimony sufficient to show that his signature was obtained thereto by the fraudulent representation that the several papers were merely requests in writing that he be credited with dividends which it was falsely claimed would be declared every three months on certain shares of corporate stock for which he had been induced to subscribe in what appears to be a worthless oil company of which Peters was acting as trustee. In promoting the scheme to get the notes Peters was assisted by one Havinga, respondent's nephew, who was well educated in English and could converse in German, which was the only language that respondent could read or write, further than to sign his name. He was over 65 years of age and scarcely able to speak understandable English, so that in transacting business it was his practice to call to his assistance some person in whom he had confidence; and the testimony shows that he had known Havinga for many years, had received similar assistance from him on different occasions, and at the time of the transaction had implicit confidence in his integrity and trusted him more than any one else. In the forenoon of the 25th day of June, 1903, Havinga, while sharing the hospitality of respondent's home, very craftily introduced the subject of oil by representing that Peters, the purported trustee of the company, who was then in town, had aided him materially in securing a large amount of the stock, which had proved very valuable, and in the afternoon of that day they together called upon the old man, and by the use of the grossest fraud and artifice induced him to sign four pink papers which they represented to be necessary in order to authorize the company to apply the dividends, to be declared during the first year, in full payment for certain shares of stock which he was to receive later without any further consideration. These papers, one of which was written by Havinga, were not signed until he had pretended to read them to respondent, and had assured him that he was not to be cheated, and that they were not notes, nor anything requiring the payment of money, but merely the requests above

mentioned. A few days later, and after the certificates of stock had been sent from St. Paul and received by respondent, Peters and Havinga called at his house and stated that the papers he had signed previously were not on the company's blanks, and for that reason alone he must sign four white papers of the same import, and, after Havinga had pretended to read them with the explanation that they were the same and all right, respondent affixed his signature thereto and they took them away. It is quite evident that these last-mentioned papers were the promissory notes, aggregating $1,200, which appellant purchased of Peters at its bank in Sibley, Iowa, paying $1,050 therefor, according to the testimony of the cashier of that institution. Though Peters was a stranger to the bank, and the nature of his business unknown to its officers, no inquiry was made concerning him, nor as to the purpose for which the notes had been executed; but it was ascertained from Worthington, Minn., where respondent lived, that he was perfectly responsible and prompt in meeting his obligations. The foregoing was submitted to the jury, together with other facts and circumstances sufficient to reasonably justify the inference that respondent, without negligence on his part, was fraudulently induced to sign the notes in suit, believing them to be written requests that dividends received from corporate shares be applied in payment therefor.

Neither party being a resident of South Dakota, it is quite probable that appellant brought the action in this jurisdiction, rather than in Minnesota, where the notes were executed and made payable, for the purpose of escaping the consequences of a change in the law merchant effected by the statute of that state, which was duly proved at the trial, and which reads as follows: "No person, nor the heirs or the personal representatives of any person whose signature is obtained to any bill of exchange, promissory note or other paper negotiable under the law merchant shall be held on any such bill, note or contract, nor liable in any manner on account of such signature, if it shall be made to appear as a matter of fact that the signature to such bill, note or contract is obtained by fraudulent representation, trick or artifice as to the nature and terms of the contract so signed, and that the person

whose signature is so obtained does not at the time of affixing such signature, believe that the contract so signed is a bill of exchange, promissory note or other paper negotiable under the law merchant, and that the person whose signature was so obtained, is not guilty of negligence in signing such paper without knowledge of its terms. That the question of negligence in any suit on such contract, shall in all cases be one of fact for the jury, or, if the suit be tried by the court without a jury, for the court. That in all such cases the person sought to be charged on such bill, note, or contract, shall be entitled to a jury trial on such question of negligence." Section 1, chapter 114, p. 157, Laws 1883. In the absence of anything to the contrary, it must be presumed that all negotiations, including the execution and transfer of the notes, were conducted with reference to the statute of Minnesota, and it has long been settled by the concurrence of reason and authority that all matters bearing upon the interpretation and validity of a contract are determined by the law of the place where such contract was executed and to be performed. In discussing the proposition at page 386 of his excellent commentaries on the Conflict of Laws, Judge Story employes the following language: "But suppose a negotiable note is made in one country and is payable there, and it is afterwards indorsed in another country, and by the law of the former country equitable defenses are let in in favor of the maker, and by the latter such defenses excluded; what rule is to govern, in regard to the holder, in a suit against the maker to recover the amount upon the indorsement to him? The answer is, the law of the place where the note was made; for there the maker undertook to pay, and the subsequent negotiation of the note did not change his original obligation, duty, or rights."

Conformable to the view of Judge Story and the presumed intention and understanding of all interested parties, the courts have quite uniformly held that the law of the place where the contract is made and to be performed must govern as to its construction, validity, and enforcement. Curtiss v. Leavitt, 15 N. Y. 227; Home National Bank v. Hill, 165 Ind. 226, 74 N. E. 1086; Easton v. Wostenholm, 137 Fed. 524; Clague v. Creditors, 2 La. 114; Stumpf v. Hallahan, 101 App. Div. 383, 91 N. Y. Supp. 1062;

Midland Steel Co. v. Bank, 34 Ind. App. 107, 72 N. E. 290; Brandt, Sur. 162. In an action like this, where no citizen of ours can be injured, comity between states is sufficient to prevent this nonresident corporation from enforcing a contract in our courts so immoral in its inception and which perpetrates a flagrant fraud upon an innocent citizen of a sister state, whose Legislature has provided him with ample protection and immunity.

Without any prejudicial errors of law occurring at the trial in matters pertaining to the evidence, or in the manner of its submission to the jury, the correct conclusion was reached in favor of respondent; and the judgment appealed from is affirmed.