[File No. 6302.]

EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, a Corporation, Appellant, v. JOHN L. BOISVERT and Blanche Boisvert, Respondents.

(262 N. W. 188.)

Opinion filed August 14, 1935.

*Nestos, Herigstad & Stenersen,* for appellant.

8

*C. D. Aaker,* for respondents.

BURR, J. This is an action to cancel a contract of life insurance with disability benefit, on the ground of fraud in the application for reinstatement—the policy being issued in 1926. Plaintiff appeals from an adverse judgment.

The contract had the following provisions: "All premiums are payable in advance at the Home Office, or to any Agent or Cashier of the Society upon delivery on or before their due date, of a receipt signed by the President, a Vice-President, Secretary or Treasurer, and countersigned by said Agent or Cashier"; the payment of a premium "shall not maintain this policy in force beyond the date when the succeeding premium or installment thereof becomes payable." and

"Reinstatement: If this policy shall lapse in consequence of the non-payment of any premium when due, it may be reinstated at any time upon the production of evidence of insurability satisfactory to the Society, and the payment of all over due premiums, with interest at 5% per annum, and upon the payment with interest or the reinstatement of any indebtedness to the Society secured by this policy."

In March, 1932, after notification that the policy had lapsed, the insured made a written request for reinstatement, as follows:

"I Hereby Certify that I am in good health; that except as stated below, I have had no illness, have not consulted any physician or practitioner, have not been a patient in any hospital or sanitarium, and that there has been no change in the health record of my family, since the issuance of the policy.

"I Hereby Agree that if the above numbered policy is reinstated by the Society, such reinstatement shall be based upon the good faith of this declaration, which is personally signed by me; and that the reinstatement if granted shall not take effect until all premiums in arrears, with interest, have been duly paid during my continued good health."

No exceptions were "stated below."

Plaintiff says these statements made by insured were knowingly fraudulent and untrue; were made with intent to deceive; that plaintiff thereby reinstated the policy; that in truth and fact the insured had

consulted two physicians prior thereto—one in January, 1928 and one in January, 1931—that when he applied for reinstatement he was suffering from ulcers of the stomach and was so advised and then knew he had been and was ill; that these statements "were all material to the risk and increased the risk of loss"; that had the plaintiff known these statements were false and untrue and that the defendant had consulted with and been treated by physicians, it would not have reinstated the policy.

In August, 1932, insured applied to the company for disability benefits claiming to be totally and permanently disabled because of ulcers of the stomach, saying the condition began in May.

The record shows that in November, 1932, the plaintiff announced it cancelled the policy and tendered the amount of the premiums paid since restoration. It informed defendants it "was ready, willing and able to return to the defendants at any time the said premium and whatever else, if anything, in the way of consideration that was given" to the plaintiff and the defendants refused to accept such tender.

The defendants deny the allegations of fraud and allege that after the reinstatement the plaintiff demanded, and accepted the payments of premiums. The record shows whatever premium was due on the policy on January 2, 1933, and which the plaintiff refused to accept was legally tendered and "thereafter deposited in a bank of good repute in the City of Minneapolis, Minnesota, where it remains subject to the order of the plaintiff. . . ."

The case was tried in the District Court without a jury. The court made findings to the effect that insured was not suffering from ulcers of the stomach at the time of the reinstatement and had committed no fraud or deceit whatever upon the plaintiff; that whatever consultations with physicians the insured had between the time of the issuance of the policy and the reinstatement were merely for the purpose of consulting them because he "complained of a slight or temporary ailment consisting of digestive disturbances, gas on the stomach"; that he was told by the doctors that there was nothing seriously the matter with him "and that he was suffering from too much worry over lack of work; that both doctors prescribed the usual prescription for neurasthenics, and neu-

rotics." The court found also that on March 16, 1932, the said insured defendant was in good health.

The defendant's explanation of his act in signing the application for reinstatement is that before the lapse of the policy he had paid the premium due by mailing to the district office a cashier's check, expecting to get his receipt. Not getting his receipt he made inquiry. By this time the time for payment had expired. The company replied no check was received and that he should send a duplicate of the check and sign a "slip" they sent him. He signed this form but said he "didn't read it over. I just read the head line of it and that was all." He sent in this form and the check and the policy was reinstated. This was in March, 1932. We have no good reason for doubting this. The record is ample to show days of grace are allowed for the payment of the premium and that before the expiration of the days of grace insured mailed to the plaintiff a cashier's check for the amount of the premium, with postage prepaid. Plaintiff says it never received this check. That a cashier's check was purchased is corroborated by an officer of the bank who testified to issuing it.

Respondent urges that the policy did not in fact lapse, that there had grown up between the insured and the company a custom of payment of premium by check or draft transmitted through the mail, thus making the post office the agent of the company, and the loss of the check in transit was the loss of the company. Respondent has failed to show that transmission by mail was the usual method of payment in this case, that the company, by its permission of this course of conduct, had waived the specific provisions regarding the manner and place of payment of premiums. The burden of proof is upon the insured to show this waiver of strict compliance and the burden has not been sustained.

The undisputed testimony shows that in January, 1928 the insured had consulted Dr. James Hayes of Minneapolis relative to some stomach complaint. The doctor gave him some quinine and told him there was nothing wrong. This is corroborated by the deposition of Dr. Hayes on behalf of the plaintiff. The doctor stated he found nothing the matter with him; that he considered him a neurotic and that whatever trouble he had was occasioned by his worrying about his job; that he did not think at that time he was suffering from any ulcer of the

stomach and never thought of that until after "they wrote me from up there and said they had diagnosed an ulcer. I did not think of an ulcer myself at the time."

In January, 1931 the insured had consulted Dr. M. J. Fardy of Minot, complaining of "coughs and pain in the chest, loss of weight and strong gas on the stomach, and pain in the costal angle usually coming after meals." The doctor said the history given by the insured at that time "was sufficiently suggestive of ulcer that I advised him to have further examination . . . , and fluoroscope examination was done a day or two afterwards. . . ." The doctor testified that he did not tell the insured he had ulcers but treated him for bronchitis. Insured had a bad cold and was in bed for two or three days. The doctor thought he was a neurotic and had nervous indigestion. He considered at the time of his examination that the insured was in normal health outside of the neurotic tendency and the chronic bronchitis.

Section 6501 provides: "No oral or written misrepresentation made in the negotiation of a contract or policy of insurance by the insured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching, unless such misrepresentation is made with actual intent to deceive, or unless the matter misrepresented increased the risk of loss." Section 6502 makes this provision applicable "as well to a modification of a contract of insurance as to its original formation. . . ."

It was well settled that § 6501 of the Compiled Laws contains two separate and independent provisions which will avoid a policy—either, that the "misrepresentation is made with actual intent to deceive" or that "the matter misrepresented increased the risk of loss." See Satterlee v. Modern Brotherhood, 15 N. D. 92, 106 N. W. 561; Soules v. Brotherhood of American Yeomen, 19 N. D. 23, 120 N. W. 760; Donahue v. Mutual L. Ins. Co. 37 N. D. 203, 164 N. W. 50, L.R.A.1918A, 200; Thomas v. New York L. Ins. Co. 65 N. D. 625, 260 N. W. 605. The Donahue Case cited and Brown v. Inter-State Business Men's Acci. Asso. 57 N. D. 941, 224 N. W. 894, apply this principle— the issues therein being whether the misrepresentation was in fact made with intent to deceive, or was the matter misrepresented such that it increased the risk of loss.

The plaintiff says that the statement made by insured that he had not consulted physicians since the issuance of the policy was false and made with intent to deceive. This statement was false, and is admitted by the insured to have been false. But such statement must be more than false. It must be made with intent to deceive. If made with such intent the reinstatement could be rescinded without proof of any increase of risk.

The trial court found that the defendant was not suffering from ulcers at the time he applied for reinstatement; that at said time he was in good health and had been so advised by the two doctors which he had consulted. The evidence introduced sustains such finding. The insured had no purpose in deceiving. The doctors had told him there was nothing wrong with him and the doctors admit this. They thought he was a neurotic and treated him accordingly. In his application for disability benefits the insured stated that a doctor prescribed for him and attended him in that disability; but the testimony of the doctor was not taken. All that the record shows with reference to the disability is that in May, 1932 the insured was "suffering from stomach trouble"; that he went to see the doctor and that he made his claim on what the doctor told him. There was nothing to show when this trouble began. The insured said he was not able to work at the time and that he had the same kind of a pain as he had when he had consulted Dr. Fardy in 1931; but that Dr. Rowe said he had an ulcer though he did not know for sure, "but it looked like it." The burden of proof is upon the company to show that the statements made in the request for reinstatement were false and that the insured, at the time the statements were made, was not in good health and was suffering from ulcers of the stomach—one of the conditions upon which it bases its right to rescind the reinstatement.

The record shows the insured was a neurotic. It is true he certified that he had no "illness." The record shows that he did consult doctors for pains and aches, which they thought were largely imaginary, and at one time he had a "severe cold", which kept him in bed for two or three days; but as set forth in Cunningham v. Penn Mut. L. Ins. Co. 152 La. 1023, 95 So. 110, it is possible for answers "to be knowingly untrue from a literal standpoint, and yet not fraudulent, for the appli-

cant may, in good faith, have considered the facts not of sufficient importance to report, especially in view of the law, as announced by the decisions of this court and sustained by the jurisprudence of the other states, to the point that inconsequential illnesses do not have to be disclosed even though they may have occasioned the attendance of a physician." The record is ample to show that when the insured applied for reinstatement there was nothing wrong with him in particular.

Though he did not take the trouble to read the form he signed, yet if the insured gained an advantage over the plaintiff by misleading it to its prejudice he would be guilty of constructive fraud. The statute says:

"1. In any breach of duty which without an actually fraudulent intent gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice or to the prejudice of any one claiming under him; or,

"2. In any such act or omission as the law specifically declares to be fraudulent without respect to actual fraud." Comp. Laws, § 5850.

But it must be clear that had he stated to them, as he should have stated, that he had consulted these two doctors, the company would not have learned anything which would justify a denial of reinstatement. What it is seeking to do here is to cancel a policy of life insurance, clearly honest in its inception. It is true § 6490 of the Compiled Laws provides: "A representation may be oral or written"; § 6498 provides: "A representation is to be deemed false when the facts fail to correspond with its assertions or stipulations"; and § 6499 says "If a representation is false in a material point, whether affirmative or promissory, the injured party is entitled to rescind the contract from the time when the representation becomes false"; yet "The materiality of a representation is determined by the same rule as the materiality of a concealment." Comp. Laws, § 6500. "Materiality is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due in forming his estimate of the disadvantages of the proposed contract or in making his inquiries." Comp. Laws, § 6484. The materiality is a matter which is to be determined by the court.

The trial court found the insured committed no fraud on the company, nor deceived it.

Insured's explanation of how and why he signed the form sent to him is not disputed. It is clear he was not thinking of deceiving the company; he had no intent to deceive the company when he signed the statement. There is nothing to indicate that this was in his mind. The record showed he wanted to have his policy in good standing; he had sent a cashier's check. He inquired why his receipt was not delivered, and when he found the company claimed they had not received the cashier's check, he sent them a duplicate, signing a form which was delivered to him and making no examination of the form and apparently not knowing its contents. There is a distinction between his intent to deceive and actual deceit. One may by his acts of carelessness in fact deceive though he had no intent; but in this case the finding is he did not in fact deceive and this finding is well sustained. An employee of the plaintiff testified that the request for reinstatement came to his attention in April, 1932, as part of his duties, that he approved the same and in doing so relied on the statements made therein; that if he had known the defendant had been treated by these two doctors he would not have approved the reinstatement. This is all the testimony there is on this point. No one states what was the practice of the company when, on application for reinstatement, it learned there had been consultations with doctors. No one shows that if known the insured had consulted doctors the request for reinstatement would have been rejected ipso facto. We may assume it would have resulted in inquiry; but had inquiry been made of these doctors, the plaintiff could not have found other than that what the doctors testified to in this case—that the defendant was not suffering from any disease. Nowhere is it intimated plaintiff would have made an independent examination, or if it had, that the result would have been such as to show the matter misrepresented increased the risk of loss.

Neither did the matter misrepresented increase the risk of loss. It is the risk insured against that must be increased before a misrepresentation can be permitted to avoid the policy on that score. We can not overlook the fact that in the case at bar the defendant was not suffer-

ing from disease at the time of reinstatement. When he applied for reinstatement, he was a neurotic, he thought he had symptoms, but the doctors assured him he was all right. Had the insured stated the facts exactly as they were and the company been fully apprised thereof, no condition would have been shown wherein the risk was increased. With the full truth known the probability is the company would not have hesitated a moment in reinstatement. The trial court had the right to assume this to be the fact. True some months thereafter insured claimed to be suffering from ulcers of the stomach and bowels; but there is no medical testimony as to this condition nor any report of medical examination. He filed a disability claim in August, but in this claim he states that during the past five years he had no other illnesses though he does say his health was first affected by this illness "about two years ago." However it was a mere claim for disability benefits. The court was justified in finding as a fact that whatever may have been his claim for disability, it was not well founded; that the insured was in good health at the time of reinstatement.

The plaintiff cites the case of Prudential Ins. Co. v. Ashe, 266 Mich. 667, 254 N. W. 243; but the case is not in point. There the insured certified that he was in good health and free from disease whereas as a matter of fact he knew that he had been ill with pleurisy, had been treated for fistula and lumbago and had a condition indicating tuberculosis. He concealed these facts from the company and also the names of the doctors with whom he treated. Clearly if the company had had the names of the doctors, they would have found a condition which would have justified refusal to reinstate him.

The plaintiff cites the case of Damgaard v. South Dakota Benev. Soc. 62 S. D. 533, 254 N. W. 924; but this case is not in point, for therein the insured was actually suffering from disease which terminated her life 26 days later. In the case at bar the facts show that the insured had no troubles, even though he thought he had.

Thus when the misrepresentations were made without any intent to deceive, and the matter misrepresented did not increase the risk of loss because at that time the plaintiff was in good health and was not suffering from ulcers of the stomach the plaintiff was not justified in can-

celing. the policy on the ground of misrepresentation.    The judgment is affirmed.

CHRISTIANSON, J., concurs.

BURKE, Ch. J., and NUESSLE, J., concur in the result.

MORRIS, J., not participating.