BRIGGS, Appellant

v.

UNITED SERVICES LIFE INSURANCE COMPANY,
Respondent

(117 N.W. 2d 804)

(File No. 9985. Opinion filed November 16, 1962)

**Bottum & Beal,** Rapid City, for Plaintiff and Appellant.

**E. W. Christol,** Rapid City, for Defendant and Respondent.

ROBERTS, J. This action was brought to recover upon a policy of life insurance applied for on January 12, 1960, in which plaintiff, wife of the insured, was named as beneficiary. The insured died on February 19, 1960, at the age of 42. The jury returned a verdict for the defendant and from the judgment entered thereon plaintiff has appealed.

The evidence shows that the insured, Brigadier General Loran Dale Briggs, was at the time of making application Commander of Ellsworth Air Force Base, Rapid City, South Dakota. Having inquired of defendant company concerning life insurance, he was solicited on January 8, 1960, to make application by a representative of defendant company. On January 12, 1960, insured made application on a form prepared by the defendant and all the entries therein except the signature of the applicant are in the handwriting of the soliciting agent. Defendant company defended on the ground that insured had falsely answered questions in his application and that since the false statements materially affected acceptance of the risk the insurance did not attach. The questions, with the answers, are as follows: "25. (a) Date of your latest service physical examination. (Answer) Jan. '60. (b) Details of any hospitalization, medication or treatment recommended as a result thereof. If none, so state. (Answer) None. 26. Name all other physicians and practitioners you have consulted, or who have examined or treated you, within the past five years. State for what conditions or purposes. Give dates and full details. If none, so state. (Answer) None. 27. Have you ever had or been treated for cancer, diabetes, heart disease, high blood pressure or tuberculosis? (Answer) No. If 'yes', give

dates and full details, including names and addresses of doctors. 28. Are you now in good health and free from defect or deformity? (Answer) Yes." There was no medical examination. The application contained these words: "All statements and answers in this application are made by me to obtain the insurance hereby applied for and are complete, true and correct, and I request and expect the Company to accept and rely on them."

The application forming a part of the policy also contained the condition "that any insurance approved pursuant to this application shall take effect at 12 o'clock noon, Eastern Standard Time, on the date of such approval by the Company at its Home Office or on the date designated by me in Part C of Question No. 9, whichever is the later date, **provided that I am then in good health."** To Question 9 applicant answered: "Date policy same date this application is approved." The final paragraph on the face of the policy read: "In Witness Whereof, the United Services Life Insurance Company has caused this policy to be signed at Washington, D. C., as of the date of issue from which date policy years and anniversaries shall be computed." Immediately following were the signatures of the president and secretary of the company. The date of issue by terms of the policy was January 15, 1960.

The policy further provided that this "policy and the application therefor shall constitute the entire contract between the Insured and the Company. All statements made by the Insured shall, in the absence of fraud, be deemed representations and not warranties. No such statement shall void this policy or be used in defense of a claim hereunder unless it is contained in a written application, a copy of which was attached to the policy when issued. * * * No change, modification or waiver of any of the provisions of this policy shall be binding upon the Company unless made in writing and signed by the President, a Vice President, the Secretary, or an Assistant Secretary of the Company. The Company shall not be bound by any promise or representations heretofore or hereafter made by any agent or person other than the above."

Defendant for answer to the complaint as we have indicated alleged that plaintiff made false and fraudulent represen-

tations in his application for insurance upon which defendant relied and in the absence of which defendant would not have issued the policy of insurance. Defendant further specifically alleged that applicant was not at the time of making application in good health, but on the contrary was afflicted with and suffering from arteriosclerotic heart disease and atrial fibrillation secondary thereto. An amended answer filed at the commencement of the trial by leave of court further alleged that there was a breach of the condition precedent in the policy that it shall not take effect unless at the date thereof applicant was "then in good health"; that he was at that time afflicted with and suffering from heart disease. Plaintiff resisted the motion to amend on the ground that defendant after expenses of suit had been incurred and plaintiff had relied on the defenses asserted should not be permitted to shift ground and assert an additional defense. We do not deem it necessary, however, because of the conclusion reached, to consider or discuss the claim that the court erred in granting the motion to amend.

Dr. William T. Kelley, surgeon at Ellsworth Air Force Base, testified that the annual physical examinations of insured for 1958 and 1959 disclosed an irregularity of the heartbeat. He was also the examining physician on January 8, 1960, at which time he informed General Briggs that he should get "some rest and come in for a recheck. There was a slight irregularity in his heartbeat." Prior to this examination the insured had noted a dropped beat in his pulse. On January 14, 1960, a recheck still disclosed an irregularity of the heartbeat and his flying status was temporarily suspended.

Dr. William J. Feeney, stationed at the School of Aviation Medicine, Brooks Air Force Base, Texas, testified that he examined General Briggs on January 20, 1960, and concluded that he had "arteriosclerotic heart disease, and that the atrial fibrillation was secondary."

General Briggs returned to Ellsworth Air Force Base from the School of Aviation Medicine on January 25, 1960. On January 28, his electrocardiogram indicated no change. His resting pulse was sixty and exercise caused it to increase to one hundred forty. On February 18, he discussed with the base surgeon

the findings of the School of Aviation Medicine and having returned the following morning to fill out some medical forms died in the surgeon's office.

Dr. Donald Kegaries, a heart specialist residing in Rapid City, South Dakota, testified that he personally knew General Briggs, had played golf with him up until a few months prior to his death and that he never suffered from shortness of breath or other ailments which would indicate heart disease and appeared to be in excellent health. He further testified that having examined the medical record of the General and the Armed Forces Institute of Pathology's report and considering the same together with the fact that insured came down with a severe attack of flu he was of the opinion that the cause of death was ventricular fibrillation; that influenza may have weakened the heart "to the extent that it suddenly went into failure from ventricular fibrillation."

Plaintiff, a witness in her own behalf, testified that she considered her husband "a very healthy man"; that he was an instructor-pilot and had flown an eight hour mission on the day the application was signed; that he played golf, bowled, hunted, and lead an active life, and that he had never been seriously ill until the first week in February, 1960, when he contracted influenza.

Plaintiff contends that the nature and extent of the obligations created by the contract of insurance are governed by the laws of the District of Columbia. Under the terms of the policy, it was to be approved at the home office of the defendant which is in Washington, D. C., and the insurance was to take effect on the date of the approval at the home office or on the date designated by the applicant, whichever was the later date, provided that applicant was then in good health. A contract must be construed in accordance with the law of the place where made unless it is shown that it was the intention of the parties to be bound by the law of some other place. Meuer v. Chicago, M. & St. P. Ry. Co., 11 S.D. 94, 75 N.W. 823; First Nat. Bank of Sibley, Iowa v. Doeden, 21 S.D. 400, 113 N.W. 81; Federal Deposit Ins. Corp. v. Stensland, 70 S.D. 103, 15 N.W.2d 8. The test of the place of a contract is the place where the last act is done by either of the parties which is necessary to complete the contract and give it validity. 11 Am.Jur.,

Conflict of Laws, §§ 100, 152; Restatement, Conflict of Laws, § 311. On January 15, 1960, when the policy issued at the home office, the premium had been paid and nothing further remained to be done. The last act to be performed was the approval of the contract by the defendant in the District of Columbia. Wastun v. Lincoln National Life Ins. Co. of Ft. Wayne, Ind., 8 Cir., 12 F.2d 422; Harris v. New York Life Ins. Co., 27 Del.Ch. 170, 33 A.2d 154; Pearsall v. John Hancock Mut. Life Ins. Co., 321 Mass. 361, 73 N.E.2d 612; Young v. Order of United Commercial Travelers, 142 Neb. 566, 7 N.W.2d 81; Insurance Law and Practice, Appleman, § 7080. Tested by these principles we conclude that the policy of insurance is a District of Columbia contract.

There was in effect in the District of Columbia at the time of issuing the policy in the present case an Act of Congress (Section 35-414, D.C.Code 1940) providing:

> "The falsity of a statement in the application for any policy of insurance shall not bar the right to recovery thereunder unless such false statement was made with intent to deceive or unless it materially affected either the acceptance of the risk or the hazard assumed by the company."

The policy contained as we have stated the provision for sound health at the time of approval. Defendant contends that there is a difference between obtaining a contract of insurance through representation as to a fact and making of the existence of such fact a condition precedent to the policy taking effect. Many cases hold that under such a provision in a policy the question is not of the good faith of the insured in accepting delivery of the policy, but only of the existence of the fact which is made a condition precedent to the policy taking effect. Chorney v. Metropolitan Life Ins. Co., 54 R.I. 261, 172 A. 392; Lee v. Prudential Life Ins. Co., 203 Mass. 299, 89 N.E. 529; Mutual Trust Life Ins. Co. v. Ossen, 2 Cir., 77 F.2d 317; Grover v. John Hancock Mutual Life Ins. Co., 119 Vt. 246, 125 A.2d 571; see also annotation in 100 A.L.R. 362.

Plaintiff relies upon Prudential Ins. Co. v. Saxe, 77 U.S.App.-D.C. 144, 134 F.2d 16, a decision of the United States Court of Appeals for the District of Columbia, wherein the court took the view

that Section 35-414, supra, was intended to present innocent and immaterial representations in an application from avoiding the insurance and held that "its effect cannot be escaped by the device of contracting to the contrary or labelling a contractual attempt to do this a 'condition precedent' to attaching of the risk." The court in support of its holding cites Schmidt v. Prudential Ins. Co. of America, 190 Minn. 239, 251 N.W. 683; Mutual Life Ins. Co. v. Mandelbaum, 207 Ala. 234, 92 So. 440, 29 A.L.R. 649 and Lynch v. Prudential Ins. Co., 150 Mo.App. 461, 131 S.W. 145, wherein the same conclusion was reached under similar statutes. See also 9 A.L.R.2d 1459 - 1461. The Supreme Court of Minnesota in Schmidt v. Prudential Insurance Co., supra, construing a statute providing for avoidance of a policy issued without medical examination only if the statements in the application were wilfully false or intentionally misleading expressed the same view that the purpose and effect of the statute cannot be circumvented by a condition precedent in the policy. It said that if an insurance company chooses to issue nonexamination policies, it can only do so subject to the provisions of the statute, "the effect of which cannot be avoided by the insertion in the policy of any 'condition precedent' which attempts to destroy its meaning and effect."

The court in Prudential Ins. Co. v. Saxe, supra, interpreting the provisions of the statute said: "To avoid the policy under the statute the statement must be both false and made with intent to deceive or material to the risk or its acceptance, **unless possibly both intent to deceive and materiality are required in addition to falsity, a matter which need not be decided in this case.**"

Plaintiff contends that proof that representations were false and material, without proof of intent to deceive, was insufficient to constitute a defense. The court in the Saxe case made clear that it was not determining whether or not the language of the statute should be construed conjunctively. The precise question whether proof that a representation is false and material constitutes a defense, without proof of intent to deceive, apparently has not been passed on by the courts of the District of Columbia. Statutes of like import have been enacted in several states. Courts construing such statutes have generally interpreted them to mean that a policy may be avoided when the false representation has

either been made with intent to deceive, or in the alternative, when it materially affected the acceptance of the risk or the hazard assumed by the insurer. Campbell v. Prudential Insurance Co. of America, 16 Ill.App.2d 65, 147 N.E.2d 404; Coleman v. Aetna Life Insurance Co., 7 Cir., 261 F.2d 296, 72 A.L.R.2d 688; Krajewski v. Western & Southern Life Ins. Co., 241 Mich. 396, 217 N.W. 62; Johnson v. National Life Ins. Co., 123 Minn. 453, 144 N.W. 218; Levie v. Metropolitan Life Ins. Co., 163 Mass. 117, 39 N.E. 792; Rainger v. Boston Mut. Life Ass'n., 167 Mass. 109, 44 N.E. 1088; Prudential Ins. Co. of America v. Lampley, 297 Ky. 495, 180 S.W.2d 399; Crumpton v. Pilgrim Health & Life Ins. Co., 35 Ala.App. 363, 46 So.2d 848; Liberty Nat. Life Ins. Co. v. Trammell, 255 Ala. 1, 51 So.2d 174; Equitable Life Assur. Soc. of United States v. Boisvert, 66 N.D. 6, 262 N.W. 188; New York Life Ins. Co. v. Fleck, 73 N.D. 143, 12 N.W.2d 530; Commercial Standard Ins. Co. v. Paul, 35 Tenn.App. 394, 245 S.W.2d 775; Lutz v. Metropolitan Life Ins. Co., 186 Pa. 527, 40 A. 1104; 7 Couch on Insurance 2d § 35:24. This construction of Section 35-414, supra, not only complies with its literal terms, but is in harmony with the conclusion reached in well considered cases construing similar statutory provisions.

Plaintiff attacks the instructions of the court mainly on two grounds. It is contended that the court should have charged the jury that whether any of the answers in the application was ground for avoiding the policy would depend on whether it was false and made with intent to deceive and was material either to the risk or its acceptance. In view of our conclusion that the conditions in the statute are to be read disjunctively as written and that to avoid a policy both intent and materiality are not required in addition to falsity the instructions were not in this regard erroneous.

The other instructions to which plaintiff excepted relate to the condition that the insured be "in good health" at the date of the approval of the policy. The court's instruction to the jury included the following: "Defendant further asserts that it was a condition precedent to the policy taking effect that the insured, Loran Dale Briggs, be in good health on the date of the approval of the policy, January 15, 1960, and that he was not in good health on that date and therefore the policy did not become effec-

tive. * * * You are instructed that if you find that on January 15th, 1960, the date of the policy, said Loran Dale Briggs was not in a state of good health, you must find for the defendant." A condition precedent to attaching of the risk under the authority of Prudential Ins. Co. v. Saxe, supra, is subordinate to and of no effect in so far as it is in conflict or inconsistent with Section 35-414, supra. Under the instruction, unsound health of the insured at the time of issuing of the policy would defeat recovery irrespective of the provisions of the statute. The condition precedent except as to the impairment of health that may have arisen in the interval of time between the date of the application and the issuance of the policy was in conflict with the statute and for that reason inapplicable. Stephens v. Metropolitan Life Ins. Co., 190 Mo.App. 673, 176 S.W. 253; Couch on Insurance 2d § 11 :4. The error in giving the instruction was prejudicial entitling plaintiff to a new trial.

The judgment appealed from is reversed.

All the Judges concur.