**In re Thomas Eugene WORDEN and Carol June Worden, Debtors.**

**Bankruptcy No. 585–00080.**

United States Bankruptcy Court,
D. South Dakota.

Aug. 19, 1986.

Brent A. Piersma, Moore & Kandaras, Rapid City, S.D., for movant First Wyoming Bank, N.A.-Sheridan.

Harry W. Christianson, Gunderson, Farrar, Aldrich & DeMersseman, Rapid City, S.D., for Doyle D. Estes, trustee in bankruptcy.

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

This case is before the Court upon a motion for relief from stay filed on behalf of the First Wyoming Bank, N.A.—Sheridan (Bank). Counsel for the Chapter 7 Trustee and the Bank stipulated to the facts and submitted the matter to the Court on briefs. The issue is whether U.C.C. Article 9, governing secured transactions, applies to the assignment of Debtor Thomas Worden's right to receive payment under his non-competition agreement with his former employers.

### FACTS

On June 1, 1980, Debtor Thomas C. Worden and Legerski, Worden & Company, now known as Legerski, Dooley & Company (LDC), entered into an Agreement Not to Compete. In consideration of Worden's promise not to compete with LDC's accounting practice within certain geographical areas for a period of five (5) years from May 21, 1980, LDC agreed to pay Worden the sum of Ninety Thousand and no/100's Dollars ($90,000.00) plus interest, payable in ten (10) annual installments of Thirteen Thousand Seven Hundred Sixteen and 69/100's Dollars ($13,716.69), commencing June 1, 1981.

On June 19, 1980, Thomas Eugene Worden and Carol June Worden (Debtors) executed a promissory note to the Bank for the face amount of Sixty-seven Thousand Six Hundred Fifteen and 95/100's Dollars ($67,615.95). Said note was later extended by extension agreements executed by Debtors on November 17, 1981; January 28, 1982; December 12, 1982; and June 18, 1983. The Bank continues to hold the note.

In conjunction with the execution of the promissory note, Debtors assigned to the Bank their right to receive payment from LDC pursuant to the above-mentioned non-competition agreement. The Bank is a financial institution which regularly takes assignments of accounts from borrowers as security. No financing statement was filed on the assignment.

On July 1, 1983, Debtor Thomas C. Worden and LDC entered into a Modification Agreement which allowed Worden to practice accounting within certain previously restricted areas. In consideration of the modification, Worden agreed to pay LDC eight (8) annual payments of Five Thousand One Hundred Twenty-five and 25/100's Dollars ($5,125.25).

On July 2, 1985, Debtors filed their bankruptcy petition herein.

On January 23, 1986, the Bank and LDC entered into an agreement setting forth their rights between each other concerning the above-mentioned agreements. Among other things, they agreed that LDC would pay the Bank the principal amount of Thirty-four Thousand Eighty-four and 58/100's Dollars ($34,084.58), plus interest in five (5) annual installments of Eight Thousand Five Hundred Eighty-one and 44/100's Dollars ($8,581.44), commencing June 1, 1986. They also agreed that their agreement is contingent upon the Court's granting of the Bank's Motion for Relief from Automatic Stay.

The Bank claims the right to receive payment from LDC under the assignment and argues that the assignment is excluded from Article 9 filing requirements under Wyoming law. The Trustee claims a superior interest in the payments from LDC as hypothetical lien creditor in the bankruptcy case and cites South Dakota law as authority.

■ Under South Dakota law, a contract is to be interpreted according to the law and usage of the place where it is to be performed or, if it does not indicate a place of performance, according to the law and usage of the place where it is made. S.D. C.L. § 53–1–4; *see also Briggs v. United Services Life Insurance Co.*, 80 S.D. 26, 117 N.W.2d 804 (1962). The contract in the instant case required the Debtor to refrain from the practice of accounting in certain geographical areas. The restricted areas involved were those surrounding three cities in Wyoming and one city in South Dakota. The place of performance was predominantly in Wyoming. In addition,

the contract was made in Wyoming, and, thus, Wyoming law must govern. The choice of law question, however, makes little difference in this case because both South Dakota and Wyoming have adopted similar versions of the Uniform Commercial Code.

Section 9–102 of the Uniform Commercial Code, found at W.S. 34–21–902, reads as follows:

(a) Except as otherwise provided in W.S. 34–21–904 (9–104) on excluded transactions, this article applies:

(i) To any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper or accounts; and also

(ii) To any sale of accounts or chattel paper.

(b) This article applies to security interests created by contract including pledge, assignment, chattel mortgage, chattel trust, trust deed, factor's lien, equipment trust, conditional sale, trust receipt, other lien or title retention contract and lease or consignment intended as security. This article does not apply to statutory liens except as provided in W.S. 34–21–939 (9–310).

(c) The application of this article to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which this article does not apply. (Laws 1961, ch. 219, § 9–102; 1983, ch. 127, § 2.)

Article 9 of the Code thus applies to any transaction, regardless of form, which is intended to create a security interest in personal property. In the instant case, it is clear from the circumstances and the language of the assignment that the parties intended the assignment to secure the payment of funds loaned to the Debtor by the Bank. The assignment document in question reads, in pertinent part:

This Assignment is made as security for the payment of any and all past, present

and future indebtedness of every kind and nature owed and/or owing by Assignor to Assignee that is past due, currently due or which hereafter becomes due, and Assignee hereby agrees that, when all of the aforesaid indebtedness owed or owing by Assignor to Assignee shall be fully paid, it will, at the request of the Assignor, cancel the Assignment and return the Assignment to Assignor;
. . . .

The assignment goes on to state that the assignee is not responsible for any obligation or liability to perform the terms of the original non-competition agreement, and, further, it incorporates by reference the promissory note for a $90,000 loan signed by the Debtor in favor of the Bank. To conclude that the assignment was not intended as security under this set of facts would be contradictory to the plain language of the assignment.

The Bank contends that the assignment is excepted from the Article 9 secured transactions provisions of the Uniform Commercial Code under W.S. 34–21–904(a)(vi) because it is an assignment of accounts which is for the purpose of collection only. The Court cannot agree. This exclusion is for the purpose of removing from the Code assignments of a non-commercial nature, such as those to a collection agency, which are for the sole purpose of facilitating collection of a debt. It does not exclude transactions generally considered "financing in nature." *See* Uniform Commercial Code § 9–104, comment 6; *Daly v. Shrimplin,* 610 P.2d 397, 401 (Wyo.1980). Contrary to the facts in the instant case, a "collection only" assignment does not involve an advance of money. Rather, the money is paid only if the collection is made. *Id.* at 401.

The rights of the Bank under the assignment in the instant case, therefore, are governed by Article 9 of the Uniform Commercial Code. Section 9–302, found at W.S. 34–21–931(a), requires a creditor to file a financing statement in order to perfect its security interest unless the transaction is one specifically excepted from that requirement under the Code. As the Trustee accurately points out, the Bank does not fit within any of the stated exceptions. There is an exception for assignments which do not transfer a significant part of the outstanding accounts or contract rights of the assignor, but comment 5 under this section says that the purpose of the section is to save from ex post facto invalidation casual or isolated assignments and that any person who regularly takes assignments of debtors' accounts should file. In the instant case, the Bank regularly takes assignments, and this was not a casual or isolated transaction. Because the Bank's interest in the assignment is, therefore, unperfected, it is subordinate to that of the Trustee in Bankruptcy who has the rights of a hypothetical lien creditor from the date of the filing of the bankruptcy petition.

This constitutes the Court's Findings of Fact and Conclusions of Law in the above-entitled matter pursuant to Bankr.R.P. 7052 and 9014 and F.R.Civ.P. 52. Counsel for the Trustee is directed to submit an appropriate order denying the motion for relief from stay in accordance with Bankr. R.P. 9021.