GIFFORD, Respondent v. BOWLING, Appellant

(200 N.W.2d 379)

(File No. 10883. Opinion filed September 6, 1972)

**May, Boe, Johnson & Burke** and **Gale E. Fisher,** Sioux Falls, for defendant and appellant.

**Charles Rick Johnson, Johnson & Johnson,** Gregory, for plaintiff and respondent.

WINANS, Judge.

This case comes before us on an appeal from an order denying a second motion to vacate a default judgment. The case involves procedural questions but in order to understand such questions it is necessary to briefly set forth the background history and procedures followed in the case.

The plaintiff commenced his suit against defendant by summons and complaint in the Circuit Court of Mellette County, South Dakota. Personal service, pursuant to "the Long Arm Statute", Ch. 163 Laws of 1965, SDCL 15-7, was made on defendant, a non-resident of this state, in Banks, Fayette County, Iowa, on January 5, 1967. The defendant made no appearance or answer to the complaint. On May 10, 1967 plaintiff's attorney gave notice to defendant of intention to move the court on May 18 at the courthouse in the city of Winner, South Dakota, that "the plaintiff will introduce proof and move the court to grant a default judgment to the plaintiff in accordance with the complaint filed herein." This notice was served on the defendant by first class mail addressed to him at Banks, Iowa. No appearance was made on defendant's behalf. The court heard the evidence submitted consisting of sworn testimony by plaintiff and a corroborating witness in regard to damages and gave judgment to the plaintiff against the defendant in the sum of $3,150 actual damage, $1,000 punitive damage and $15 costs and disbursements, making a total judgment of $4,165. A judgment was filed and recorded in the office of the Clerk of Courts, Mellette County, South Dakota, on June 22, 1967.

Thereafter Gifford instituted suit in the state of Iowa upon the South Dakota judgment and on December 15, 1967 default judgment was entered by the District Court of Iowa in and for Fayette County against Bowling for the sum of $4,165 with interest from that date and costs. Thereafter, the Iowa judgment was set aside and the case continued pending Bowling's action to set aside the South Dakota judgment. On June 14, 1968 Bowling moved that the South Dakota default judgment be set aside on the grounds of excusable neglect and inadvertence. He claimed he had a good, meritorious defense to the alleged cause of action of the plaintiff. This motion was brought on for hearing on November 18, 1968 before the circuit judge. After hearing, the motion was denied, the order thereon being entered on January 15, 1969. No appeal was taken from this order.

On April 7, 1969 the District Court of Iowa in and for Fayette County again entered judgment for Gifford against Bowling in the same amount. The judgment of the Iowa court reflects that

a certified copy of the January 15, 1969 order made by the Circuit Court of Mellette County, South Dakota, denying defendant's motion to set aside default judgment had been filed with the court there.

Eight months later on December 13, 1969 Bowling again served another motion to set aside the South Dakota judgment. A hearing was had and the order denying this second motion to vacate was filed August 19, 1970. It is from this order that Bowling appeals.

The second motion to vacate judgment was made pursuant to the provisions of SDCL 15-6-60(b) (2) and 15-6-60(b) (3) to vacate the judgment or to open it up on the grounds that said judgment was procured by plaintiff's fraudulent representations and allegations and upon the further ground of newly discovered evidence. In his second motion to vacate, the defendant also states that the false representations contained in the plaintiff's complaint and the default judgment entered thereon have resulted in a fraud upon defendant, as well as a fraud upon the court.

The files in the case further show that within a few days after service of the complaint Mr. Bowling took the summons and complaint to his Iowa attorney, whom he advised that he was desirous of avoiding the expense of defending the suit if it wasn't necessary. The Iowa attorney decided that any judgment against Mr. Bowling would be only in rem and that execution would not issue upon any such judgment except as against property Mr. Bowling might own within the state of South Dakota. As a consequence of this and because Mr. Bowling had no property in South Dakota, no answer to the summons and complaint was made and Mr. Bowling told his attorney to ignore the same. It was only after the suit in Iowa, based on the South Dakota judgment, that the defendant became concerned about its legal effect and his liability.

The complaint in this action, in brief, alleges that the defendant through an agent in March of 1961 sold two registered quarter horse mares to the plaintiff at the plaintiff's ranch in Mellette County, South Dakota, that said agent was driving one of de-

fendant's trucks in which he hauled the quarter horse mares, that he represented the horses as belonging to the defendant and as being registered by the American Quarter Horse Association, that the plaintiff paid the defendant's agent $1,400 in cash plus horses worth at least $500 and that the quarter horse mares were left at his ranch and that defendant's agent promised defendant would promptly send to the plaintiff the transfer papers showing title to the two registered mares as having been transferred to the plaintiff. The complaint further alleges that the defendant failed to do this, had no intention of so doing and because of this failure, the plaintiff was unable to register the colts thereafter born to these two mares, and asked for $3,150 general damages and $5,000 exemplary damages. The showing of the defendant on his second motion to set aside the default judgment is a denial that the person who sold the horses to the plaintiff was defendant's agent, that defendant had previously sold the mares at a quarter horse sale held at the St. Louis Horse Auction Company on February 17 and 18 of 1961, and that as a consequence of having sold them there and having signed the proper transfer papers there he was in no position to and did not sell them to the plaintiff.

The motion for relief of the default judgment must be decided pursuant to the provisions of SDCL 15-6-60(b). The pertinent provisions of that section insofar as this case is concerned are as follows:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

(1) Mistake, inadvertence, surprise, or excusable neglect;

(2) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under § 15-6-59(b);

(3) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

\* \* \* \* \* \* \* \*

The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order or proceeding was entered or taken. \* \* \* Section 15-6-60 does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided by statute or to set aside a judgment for fraud upon the court."

By the terms of the motion here involved, Bowling specifically moved to set aside the default judgment under (2) and (3) of the above cited section. This motion was made 18 months after judgment. Moore's Federal Practice, Vol. 7, beginning at Sec. 60.28(2), p. 319, states as follows:

"If a motion for relief under clause (1), or (2), or (3) is not made within a reasonable time it will be denied, although made within the one year period. While the 'reasonable time' limitation may cut down the one year period, it cannot, however, enlarge that period, for a motion for relief under clause (1) or (2) or (3) is subject to a maximum one year period, computed generally from the entry of the final judgment, and, in general, that time is not enlarged by the taking of an appeal.

"This maximum period of one year is not subject to enlargement by the court; and may not properly be circumvented by a utilization of any of the other clauses, (4), (5), or (6), which are subject only to a reasonable time limitation, where the reason for relief is embraced within clauses (1), (2), or (3). \* \* \*

"Nor should relief be available on a motion, made more than one year after the judgment was entered, on the basis of fraud upon the court unless the fraud can legitimately be so classed, for the maximum one year period of clause (3) bars relief by motion for other types of fraud, whether intrinsic or extrinsic, of the adverse party."

In discussing Rule 60(b) Barron and Holtzoff, Federal Practice and Procedure, at § 1330 gives the rule as follows:

" * * * Motions under clauses (1), (2) and (3), attacking the judgment on grounds of mistake, inadvertence, surprise, excusable neglect, newly discovered evidence, or fraud or misconduct of a party must be made not later than 'one year after the judgment, order, or proceeding was entered or taken.' But this one year period represents an extreme limit, and the motion will be rejected as untimely if not made within a 'reasonable time' even though the one year period has not expired. The party will be required, on any motion under the rule, to show·· good reason for his failure to take appropriate action sooner. But the concept of reasonable time cannot be used to extend the one year limit. A motion under clauses (1), (2) or (3) must be denied as untimely if made more than one year after judgment regardless of whether the delay was reasonable. * * * "

However, the defendant seeks to have a review of the first order denying the motion to set aside the default judgment. He cites in his brief the cases of Boshart v. National Benefit Association, 1937, 65 S.D. 260, 273 N.W. 7, and Davis v. Interstate Motor Carriers Agency, 1970, 85 S.D. 101, 178 N.W.2d 204, to support his position that the failure to appeal from the first order does not preclude a review of the lower court's ruling of that order by this court.

The defendant's contention is that although the trial court made no formal order vacating or setting aside the default judgment, he permitted the defendant on the hearing of the second

motion to introduce evidence to sustain his defense and that by allowing plaintiff's counsel to cross-examine as to matters presented at the hearing held November 18, 1968 upon which the first order denying a motion to set aside the default judgment was based, there was an implied vacation of the default judgment within the rules set forth in Boshart, supra, and Davis, supra. Therefore, he reasons that this court may now upon this appeal from the second motion review the first order. We think the plaintiff misconstrues the holding of the cases he has cited. We think there is a clear distinction between the present case and both Boshart and Davis. In Boshart a default judgment was entered January 15, 1935. On March 1, 1935 a hearing on application to set aside the default judgment was had and on June 10, 1935 the court entered an order denying the motion to set aside. On August 11, 1935 the defendant obtained an order to show cause why the June 10th order should not be set aside. On January 13, 1936 the court entered an order denying the application to vacate and set aside the prior order. The respondent in Boshart moved to dismiss the appeal on the grounds that an order refusing to vacate a prior order from which an appeal may be taken is not appealable and that the defendant should have appealed directly from the order of June 10, 1935, instead of moving to set it aside and then appealing from its order denying its motion. In our case the second motion was not a motion to set aside the prior order refusing to set aside the default judgment under (1) of 15-6-60(b) (1), but rather a motion brought upon entirely different reasons, namely, (2) and (3) of the above section, which are different grounds. The court did allow evidence, but this evidence was in support of the motion then before the court and the plaintiff did cross-examine for the purpose of showing that the grounds alleged were not supportable. It would be a strange situation if the plaintiff after the time limited by the statute, namely one year from the date of the judgment, could be allowed by the method he proposes to escape the bar of that statute. Furthermore, in Boshart, the court said, "As we have observed, the question presented upon the second motion was whether or not the first order was inadvertently or improvidently entered, and defendant did not seek to have a reconsideration of the grounds presented in support of the first motion."

In Davis we find the following:

"No appeal was taken from the order denying the first application to set aside the judgment; the appeal is from the order denying the second application. The time for appeal from the first order may have expired (but see SDCL 15-26-2) and plaintiff questions the right of Little Audrey to appeal from the second order. The court has considered and discussed this situation in several cases involving default judgments. Fisk v. Hicks, 29 S.D. 399, 137 N.W. 424; Western Surety Co. v. Boettcher, 36 S.D. 583, 156 N.W. 68; Boshart v. National Benefit Ass'n Inc., 65 S.D. 260, 273 N.W. 7.

"From our cases it appears a motion to set aside a default may be renewed if upon a new state of facts without leave of court but when based on the same facts, the hearing of the motion is discretionary with the court and leave must be obtained. The Little Audrey second motion was more detailed in the showing of excusable neglect plus a proposed answer and affidavits of an officer and present counsel that defendant had a meritorious defense to the action, absent from the first motion."

■ There are a number of differences between our case and the Davis case of which we will point out but two procedural differences. First, in the Davis case the second motion for vacation of the default judgment was made within the one-year period of time after the entry of judgment. Secondly, the plaintiff in the present case does not question the right of the defendant to appeal from the second order; what he does say is that for reasons (1), (2) and (3) of Rule SDCL 15-6-60(b) the motion shall be made within a reasonable time and at all events not more than one year after the judgment, and in this we think he is correct.

Barron and Holtzoff, Federal Practice and Procedure, § 1330, Rule 60, p. 423, states:

"It should be noted also that there is an express saving clause in Rule 60(b) which provides that 'this rule does not limit the power of a court * * * to set aside

a judgment for fraud upon the court.' There is no time limit on the exercise of this power. And where it is possible to bring an independent action attacking the judgment, rather than proceeding by motion, the time limits of the rule do not apply."

The defendant in his second motion made an allegation of fraud upon the court based upon what he claims to be false and fraudulent representation contained in plaintiff's complaint. 7 Moore's Federal Practice, § 60.33 at 508 states:

"Since, then, the power of a defrauded court to grant relief is a sweeping, plenary power that is not subject to any rigid time limitation as is a motion under 60(b) (3), **supra,** or to laches of a party, which normally precludes relief in an independent action, **supra,** it will be necessary at times to determine whether the fraud is fraud upon the court or some other species of fraud. In the **Hazel-Atlas** case [Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 64 S.Ct. 997, 88 L.Ed. 1250] Justice Black did not attempt to classify the fraud as extrinsic or intrinsic. And if a motion for relief is made that is within the time for relief applicable to 60(b) (3) a classification of the fraud is normally not necessary, for this clause authorizes relief on the basis of fraud in broad terms. But if the motion cannot be granted under 60(b) (3) because not timely, then it will be necessary to determine whether the fraud is a fraud upon the court, and if 'fraud upon the court' is not kept within proper limits but is ballooned to include all or substantially all species of fraud within 60(b) (3) then the time limitation upon 60(b) (3) motions will be meaningless."

We are not at all certain from the assignments of error or defendant's brief on just what he predicates his charge of fraud upon the court, but we believe that it is based upon what he calls the false and fraudulent allegations of plaintiff's complaint and plaintiff's testimony.

In Lockwood v. Bowles, D.C.1969, 46 F.R.D. 625, the court there said, quoting from 7 Moore's Federal Practice,

" 'Fraud upon the court' should, we believe, embrace only that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication. Fraud **inter partes**, without more, should not be a fraud upon the court, but redress should be left to a motion under 60(b) (3) or to the independent action."

This definition has been adopted by two courts of appeal in Kenner v. Commissioner of Internal Revenue, 1968, 7 Cir., 387 F.2d 689, 691, and Martina Theatre Corp. v. Schine Chain Theatres, Inc., 1960, 2 Cir., 278 F.2d 798, 801.

Further, the court in Lockwood v. Bowles, supra, holds: "In addition, it has been said that '[i]n order to set aside a judgment or order because of fraud upon the court under Rule 60(b), * * * it is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its decision.' Courts have found fraud upon the court only where there has been the most egregious conduct involving a corruption of the judicial process itself. Examples are bribery of judges, employment of counsel to 'influence' the court, bribery of the jury, and the involvement of an attorney (an officer of the court) in the perpetration of fraud. None of these are here alleged."

The same rule is announced in the decision of Alberts v. Brubaker, 72 S.D. 220, 31 N.W.2d 769, which held:

"The rule supported by the overwhelming weight of authority and the rule in this state is that fraud as a ground for vacating a judgment must be what is known as extrinsic fraud, that is, fraud in the means whereby the judgment was procured, and not fraud in the cause of

action or matter put in issue and presented for adjudication. (Citations) The reason for the rule is, as stated in the Reeves case [Reeves v. Reeves], 24 S.D. 435, 123 N.W. [869], 871, 'that there must be an end of litigation; and when parties have once submitted a matter or have had the opportunity of submitting it, for investigation and determination, * * * it must be regarded as final and conclusive, unless it can be shown that the jurisdiction of the court has been imposed upon, or that the prevailing party, by some extrinsic or collateral fraud, has prevented a fair submission of the controversy.' "

■ During oral argument of this case we raised the point, not briefed, or argued, or within the assignments of error, that the summons and complaint may not have been signed by plaintiff's attorney until May 18, 1967, the date default judgment was taken, the basis for this being the trial court's admonition or instruction, "You better sign the Summons and Complaint." The attorneys on both sides were instructed to prepare and file briefs upon the point we raised. No question is made as to the service of summons and complaint on defendant, as hereinbefore set forth. It would also appear that the summons and complaint bore the typewritten name of the attorney and the attorney's post office address, and also they now bear the signature of the attorney in longhand. SDCL 15-6-4(a) requires that "The summons shall be legibly subscribed by the plaintiff or his attorney" and SDCL 15-6-11 requires, "Every pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated." 72 C.J.S. Process § 19, p. 1015 states: **"Effect of lack of proper signature.** There is a difference of opinion among courts as to the effect of a want of proper signature, some holding that it renders the process void and insufficient to confer jurisdiction, and others holding that it is a nonjurisdictional defect or irregularity which renders the process voidable only." 71 C.J.S. Pleading § 339b, p. 740, gives the rule as follows: **"Effect of Omission of Signature.** The omission of a required signature from a pleading is generally considered a formal defect which can be remedied." A North Dakota case, Hagen v. Gresby, 34 N.D. 349, 159 N.W. 3, L.R.A. 1917B,

281, holds that a summons is not a nullity to which the name of the attorney for plaintiff, with his address, is typewritten at his request in accordance with general custom of office.

In Hartley v. Jerry's Radio & Electric Shop et al., 74 S.D. 87, 48 N.W.2d 925, this court held,

> "Actions are commenced in this state, in circuit court, by service of summons. SDC 33.0803. While not process in the sense of being a writ issued by a court, a summons is the notice by which jurisdiction over the person of a defendant is acquired. It was said by this court in Jacobs v. Queen Ins. Company of America, 51 S.D. 249, 213 N.W. 14, that a summons or process which is merely voidable is amendable, but a void summons or process may not be amended for the reason that it is a nullity and there is nothing to amend. If the mistake in the name of the defendant herein was not so fatally defective that the court was without jurisdiction to render the judgment it did render, the summons was voidable and subject to amendment."

It is not clear to this court from the transcript whether the summons and complaint were signed by the longhand signature of the attorney prior to the hearing on the default judgment. It is possible that the trial judge's comment was prompted by desire to have counsel check to make sure the pleadings were signed or it is just possible he may have been referring to other summonses and complaints and inasmuch as the assignments do not raise the issue, we conclude that there is nothing properly before us for decision on the question whether the summons and complaint were properly subscribed. There isn't sufficient evidence to conclude otherwise and we leave the question of what is a proper signature open. See Ball v. Jones, Fla., 65 So.2d 3, 37 A.L.R.2d 922 and the Annotation commencing at page 928; see also Rood v. McDonald, 303 Mich. 634, 7 N.W.2d 95.

██ ██ The plaintiff as a part of the judgment was awarded punitive damages in the sum of $1,000. The action is in contract. The burden of proof is upon the plaintiff to establish all of the

essential elements to sustain a recovery for exemplary damages. Stene v. Hillgren, 78 S.D. 1, 98 N.W.2d 156; Hannahs v. Noah, 83 S.D. 296, 158 N.W.2d 678. We have reviewed the record fully including the evidence offered at the hearing for default judgment and are unable to find any evidence justifying the award of punitive damages. The judgment is, therefore, modified to exclude the award for punitive damages and as to modified, the judgment is affirmed. Each party will bear its own costs of appeal.

Judgment modified and affirmed.

HANSON, P. J., and BIEGELMEIER and WOLLMAN, JJ., concur.

DOYLE, J., not having been a member of the court at the time of argument, took no part in this decision.