In the Matter of the ESTATE OF Norman C. GOSMIRE, Deceased.

Nos. 13790, 13876.

Supreme Court of South Dakota.

Considered on Briefs Jan. 18, 1983.

Decided March 23, 1983.

---

Jerome B. Lammers of Lammers, Lammers, Kleibacker & Casey, Madison, for appellant-Administrator Nat. Bank of South Dakota.

Jay M. Leibel of Ericsson, Ericsson & Leibel, Madison, for appellants Edgar Gosmire and Harold Gosmire.

T.R. Pardy of Mumford, Protsch & Pardy, Howard, for claimants-appellees Donald E. Gosmire, Gerald E. Gosmire, Ricky E. Gosmire and Jeffrey E. Gosmire.

HENDERSON, Justice.

## ACTION

The decedent, Norman C. Gosmire, was a cattle feeder and farmer who lived north of Winfred, South Dakota. In 1980, he died intestate at the age of sixty-four. In the estate proceedings, appellees alternatively claimed (1) enforcement of an oral sale of a farm and equipment, (2) a decree of specific performance for conveyance of real estate, livestock, and farm machinery based upon an oral agreement allegedly made wherein and whereby appellees were entitled to such a conveyance if they performed certain work, and (3) failing these two alternatives, reimbursement on a quantum meruit basis. From a judgment granting specific performance of the oral contract to transfer all property of decedent unto appellees, Gerald E. Gosmire and Ricky E. Gosmire, the administrator bank and Edgar and Harold Gosmire have appealed. We affirm.

## FACTS

This is a South Dakota farm story of long, hard hours of work towards a dream with inadequate legal planning culminating in family litigation. The years of work were accomplished by Donald Gosmire and his sons, Ricky and Gerald. Norman Gosmire, Donald's brother and uncle of Ricky and Gerald, failed to properly plan and effectuate written legal instruments.

Donald and decedent lived together and farmed together on decedent's farm near Winfred, South Dakota. In 1956, Donald married and later had two sons, Gerald and Ricky. When briefs were filed herein, Ricky was twenty years of age and Gerald was twenty-three. During 1962, decedent made a cattle investment that financially devastated him. Decedent contemplated bankruptcy. Donald's family gave generously of their money, milk, eggs, and labor to help reestablish decedent. In fact, dece-

dent told his neighboring farmer: "If it hadn't been for Don's cows and eggs, I would have been under." Silage cut on Donald's farm was hauled to decedent's farm. Such generosity also included the following: decedent approached Donald and told him that if Donald would give him his dairy calves from Donald's dairy herd, upon decedent's retirement or death, decedent's land and machinery would belong to Donald or his boys. From 1962 to 1972, Donald gave decedent his dairy calves, and sales of those calves, when fed out, established receipts of approximately $100,000. Some of these calves were contributed by Gerald.

Donald testified that decedent told him in 1962 that as a result of his family's efforts, the land and machinery would be for Donald or his two boys upon his retirement or death. The trial court found: "The decedent was the type of person who felt that a man's word was his bond and did not see the necessity of putting things in writing. Believing a person's word was his bond, he did business orally and with a handshake." Therefore, we do not have the nicety of a writing to examine. Shortly after decedent's statement, Donald acquired his own nearby dairy farmstead and moved his family. Decedent never married. Donald's family continued to dedicate the bulk of their time to helping decedent with his farming.

Numerous witnesses testified that Donald's sons, Gerald and Ricky, operated decedent's tractors when they were as young as seven years old. Gerald and Ricky plowed, raked hay, mowed, cultivated, baled, and ground feed. Donald and his sons worked long hours on decedent's farm without remuneration. As a general rule, the only free time Gerald and Ricky had was on Sunday afternoons. When school started, the boys worked for their uncle both before and after school. High school sports had to be neglected because decedent's chores were first. When Gerald told decedent that he wanted to go to college, decedent told him to stay on the farm as the farm would be his and Ricky's when decedent retired or died. Decedent told others how close he

was to the boys and how his farm would be theirs. Donald and his sons worked decedent's farm until decedent passed on. Decedent had planned on retiring at age sixty-five.

Donald, Gerald, and Ricky were never paid any wages for their years of hard work for decedent. Decedent was survived by three brothers, Donald, Harold, and Edgar, as well as several nieces and nephews who are issue of two deceased brothers. Witnesses testified that decedent was not fond of, and did not associate with, his brothers Harold and Edgar. Harold and Edgar asserted decedent was close to them. The facts do not bear this out. Decedent's life insurance policy named Ricky as the only beneficiary.

Substantial disputes occurred regarding statements made by decedent during the fall of 1980. Gerald testified that in the fall of 1980 his uncle told him that he and Ricky should remove his farm machinery telling them to remove it to Donald's farm because he was not going to be able to farm again. Gerald testified that his uncle told him "It's yours and Rick's, you can do whatever you want, you can take it to town, trade it off or fix it up to be ready to go next spring." Two witnesses testified that they saw decedent's machinery at Donald's farm prior to decedent's death. Appellants counter that after decedent's death, Gerald and Ricky prepared a list with Ted Gosmire, a son of appellant Harold Gosmire, which set forth forty-three items of decedent's machinery.

Strongly disputed is an offer decedent apparently made to Gerald just six days before his death. Gerald testified that decedent offered to sell his farmstead and machinery to Ricky and him for $150,000. Gerald said he accepted the offer. In their brief, Gerald and Ricky contend that their uncle's offer was only the final fruitation of the ongoing agreement between decedent and Donald with Gerald and Ricky as third-party beneficiaries. Such a contention goes to the very crux of this case. For support, Gerald and Ricky point out that decedent still owed $150,000 on his real estate mort-

gage and decedent could not convey unto them more than what he owned, i.e., his equity. Appellants assert that Gerald did not accept decedent's offer. Mary Jo Faber, a daughter of appellant Harold Gosmire testified that decedent told her Gerald had rejected his offer as too high. Appellant Edgar Gosmire testified that decedent told him that Gerald had rejected his offer as too high. The trial court responded by granting Gerald and Ricky's claims and ordering specific performance of the oral contract to transfer all of the decedent's property both real and personal to them. Appellants set forth five issues in their briefs. However, the record reflects that only three issues need be treated and they are separately set forth and examined below.

## ISSUES

### I.

DID THE TRIAL COURT COMPLY WITH SDCL 19–16–34 WHEN IT ADMITTED INTO EVIDENCE STATEMENTS OF DECEDENT?

### II.

DID DECEDENT HAVE A VALID AND BINDING AGREEMENT TO CONVEY HIS PROPERTY ON RETIREMENT OR DEATH TO APPELLEES?

### III.

WERE APPELLEES ENTITLED TO A DECREE OF SPECIFIC PERFORMANCE?

## DECISION

### I.

Counsel for the administrator, at the outset of trial, asked for and received a continuing objection for "all testimony which is claimed to have been made by the decedent to another third party be excluded as hearsay except in such statements made by the decedent that might be admissible by the Court understanding the applicable rule . . . ." The continuing objection was over-

ruled for several witnesses testified at trial concerning statements made by decedent.

SDCL 19–16–34 provides:

In actions, suits, or proceedings by or against the representatives of deceased persons including proceedings for the probate of wills, any statement of the deceased whether oral or written shall not be excluded as hearsay, provided that the trial judge shall first find as a fact that the statement was made by decedent, and that it was in good faith and on decedent's personal knowledge.

The trial court's memorandum opinion states:

The Court is aware of the rule that testimony as to oral statements allegedly made by deceased persons is regarded as the weakest kind of evidence and must be viewed with great caution. In this case, the statements were made over the course of a number of years, at seperate [sic] and distinct times, were spontaneous and unsolicitated [sic]. Though the witnesses interpretations were not identical, a definite pattern develops. When taken in conjunction with the testimony of the claimants and the other evidence, it becomes definite.

Additionally, the trial court's Finding of Fact number 28 provides:

That the decedent on several occasions made his intentions known as to his intent to leave the property to Rick and Gerald by statements to various friends, acquaintances, businessmen, cattle truckers, a county commissioner, bankers, neighboring farmers, a lawyer, his doctor and the doctor's nurse, hunters, a CPA, most of whom testified as being close friends of Norman. Statements were made over the course of a number of years at separate and distinct times by the decedent, and they were spontaneous and unsolicited and took a definite pattern.

■ Decisions by the trial court concerning the admissibility of statements made by decedents are within the sound judgment of the trial court and will not be overturned on appeal unless the record demonstrates the trial court has acted unreasonably. *In re Congdon's Estate,* 74 S.D. 306, 51 N.W.2d 877 (1952).[1]

We have reviewed the record herein and we are convinced that the trial court acted reasonably in admitting the statements made by decedent therein.

## II.

Appellants assert that a valid, oral agreement did not exist between decedent, Donald, Gerald, and Ricky. Donald testified at trial, as did appellees, that decedent agreed to transfer his real and personal property to appellees on his retirement or death. Several friends, neighbors, and business acquaintances of decedent testified affirming decedent's intention to convey his farm to Gerald and Ricky. The trial court found that an enforceable oral contract existed.

■ Generally, where relatives reside together as one family, the services rendered by one member to another are presumed to be gratuitous. *Mahan v. Mahan,* 80 S.D. 211, 121 N.W.2d 367 (1963). Although Gerald and Ricky did not reside together with their uncle after 1963, the trial court in its memorandum opinion took full cognizance of the *Mahan* rule:

The general rule is that where near relatives reside together as one family the services rendered by one member to another are presumed to be gratuitous. Herein, though farming together, Donald using mostly Norman's machinery, each maintained his seperate [sic] income and made seperate [sic] decisions as to their farming operations. Evidence showed the work performed for Norman far exceeded the value of the machinery used. Norman even collected the payment for custom work done by the boys. Performance by the claimants on their parts was more than substantially just and fair to constitute an adequate consideration. The presumption has been overcome.

1. *Congdon's Estate* addressed SDC 36.0104 which had identical language to SDCL 19–16–

34. *Congdon's Estate* also held such statutes are to be construed liberally.

This memorandum opinion was fully incorporated by reference in the findings of fact.

■ The trial court's findings of fact shall not be set aside unless clearly erroneous. A finding is clearly erroneous when upon reviewing the entire evidence, we are left with a definite and firm conviction that the trial court has erred. *Estate of Nelson,* 330 N.W.2d 151 (S.D.1983); *Matter of Estate of Pierce,* 299 N.W.2d 816 (S.D.1980). Due regard is afforded to the trial court's opportunity to judge the credibility of witnesses. *People in Interest of P.M.,* 299 N.W.2d 803 (S.D.1980).

■ After reviewing the extensive record herein, we are convinced that a valid, binding oral agreement existed between decedent, Donald, Gerald, and Ricky. Oral contracts affecting real estate do not fail merely because one of the parties becomes a decedent. *Lass v. Erickson,* 74 S.D. 503, 54 N.W.2d 741 (1952). SDCL 53–8–2, our statute of frauds, provides:

> The following contracts shall not be enforceable by action unless the same or some memorandum thereof be in writing and subscribed by the party to be charged or his agent, thereunto authorized in writing:
>
> (1) An agreement that by its terms is not to be performed within a year from the making thereof;
>
> (2) An agreement made upon consideration of marriage, other than a mutual promise to marry;
>
> (3) An agreement for the sale of real estate or an interest therein or lease of the same for a period longer than one year, but this does not abridge the power of any court to compel specific performance of any agreement for sale of real estate in case *of part performance thereof.* (Emphasis added.)

An oral promise to convey real property is enforceable by specific performance where the grantee has partially performed or has acted in reliance upon the promise of the grantor in such a manner that it would invoke a fraud or prejudice against the grantee not to grant specific performance thereon. *Bentz v. Esterling,* 76 S.D. 331, 78 N.W.2d 73 (1956). Donald, Gerald, and Ricky performed their obligation thereby taking the contract out of the ambit of the statute of frauds. *Lampert Lumber Co. v. Pexa,* 44 S.D. 382, 184 N.W. 207 (1921). *See also, Dunmire v. Cool,* 195 Neb. 247, 237 N.W.2d 636 (1976).

■ During the fall of 1980, decedent, in anticipation of retirement, began to fulfill his ongoing agreement by first delivering his farm machinery to Gerald and Ricky, and later by proposing the terms of conveying the equity in his farm unto Gerald and Ricky. Although some of the evidence is conflicting, we adopt the trial court's resolution as we are not left with a definite and firm conviction that a mistake has been made.

### III.

■ Appellants contend that the trial court erred in granting specific performance of the oral contract to convey decedent's property. Specific performance is an equitable remedy which is denied or granted based upon the facts and circumstances of each case within the sound discretion of the trial court. A decision to grant or deny specific performance will not be disturbed unless the trial court has abused its discretion. *Stugelmayer v. Ulmer,* 260 N.W.2d 236 (S.D.1977); *Skjoldal v. Myren,* 86 S.D. 111, 191 N.W.2d 809 (1971); *Dolan v. Hudson,* 83 S.D. 144, 156 N.W.2d 78 (1968), *aff'd on rehearing,* 83 S.D. 331, 159 N.W.2d 128 (1968); *Renner v. Crisman,* 80 S.D. 532, 127 N.W.2d 717 (1964).

The trial court's memorandum opinion set forth the standard it held Gerald and Ricky's claim to:

> Claimants, to prevail, must prove the terms of the contract (1) by clear and convincing evidence, (2) for an adequate consideration, (3) without inducement by fraud, misrepresentation or unfair practice, (4) enforcement of which will not cause unreasonable or disporportionate [sic] hardship or loss to others, and (5) the value of services rendered are not susceptible of measurement in dollars and cents

or failure to grant such relief would operate as fraud upon claimants.

Applying the standards to the evidence, the trial court concluded:

No evidence was presented that Norman was incompetent. During the later years of his life, he was crippled to some extent, but this in no way affected his mental capacity. Neither has their [sic] been any evidence of fraud, misrepresentation, undue influence or other unfair practice.

In reliance of the oral agreement, Donald, Gerald, Ricky and Jeffery assisted their uncle to their detriment in a manner that at this time cannot be measured in dollars and cents. No accurate records have been kept and none could be reconstructed. Further, by granting specific performance, no other parties will suffer a hardship or loss.

■ A person may enter into a contract to devise property or make a will which is enforceable in equity by a third-party beneficiary. *Kuhn v. Kuhn,* 281 N.W.2d 230 (N.D.1979). Being an equitable remedy, specific performance does not lie where an adequate remedy exists at law. *Crawford v. Carter,* 74 S.D. 316, 52 N.W.2d 302 (1952). As was held in *Peterson v. Cussons,* 63 S.D. 357, 361, 258 N.W. 810, 812 (1935):

That a court of equity will decree specific performance of oral contracts to convey real property or to make a devise of real property where the claimant has performed the services specified in the contract is too well settled to warrant the citation of authorities in support of the rule; but another rule that is just as well settled is that where the value of the services rendered is susceptible of measurement in dollars and cents, specific performance will not be decreed.

■ Here, legal remedies for Gerald and Ricky's years of hard work and dedication to their Uncle Norman are inadequate because it is impossible to quantify the dollar value the boys bestowed unto their uncle. Donald, Gerald, and Ricky provided decedent with far more than farm labor: they were his family bond, shared in his hardships, and perhaps more importantly, they embraced his work ethic and farming lifestyle. If Gerald and Ricky's labor could be valued, SDCL 15–2–15(5) forecloses recovery of wages two years after the cause of action occurs. These two young men devoted their lives to a farm and an uncle. It is right and just that equity enforce the bargain.

Therefore, we hold that specific performance was properly allowed on the facts of this case.

Affirmed.

All the Justices concur.