**Howard BALDWIN, Defendant and Appellant,**

v.

**HEINOLD COMMODITIES, INC., Plaintiff and Appellee.**

No. 14498.

Supreme Court of South Dakota.

Considered on Briefs Oct. 22, 1984.

Decided Feb. 13, 1985.

Howard Baldwin, pro se.

Steven C. Beardsley of Lynn, Jackson, Shultz & Lebrun, Rapid City, for plaintiff and appellee.

MORGAN, Justice.

On February 17, 1981, a default judgment was entered in the Circuit Court of Cook County, Illinois, in favor of Heinold Commodities, Inc. (Heinold), a Delaware corporation, against Howard Baldwin (Baldwin), a South Dakota resident, for $13,861.00, plus interest of $1,936.74 and attorney fees of $405.00, for a total of $16,202.74 and Heinold's costs of the Illinois action. Heinold filed the foreign judgment with the Meade County Clerk of Courts in Sturgis, South Dakota, in November of 1981. On December 1, 1981, the Meade County Sheriff was ordered to execute the judgment. The execution was returned unsatisfied on February 26, 1982. On March 9, 1982, Heinold moved under the supplementary proceeding provisions of SDCL 15–20–1 that the Meade County Circuit Court require Baldwin to submit to an examination of any property he held that was subject to execution. The trial court heard Baldwin's motion to quash the order for supplementary proceedings and Baldwin's motion to set aside the judgment and issued a letter opinion on September 16, 1982. Baldwin's motion to quash the supplemental proceedings and his motion to set aside the judgment were denied. We affirm.

Baldwin filled out a Heinold customer application on July 9, 1979. He applied for an individual commodity futures account to be traded on his behalf on the Chicago Mercantile Exchange. Paragraph 25 of the application, which appears on page four of the contract immediately above Baldwin's initial signature specifies that

[t]his agreement shall not be deemed to be accepted by Heinold or become a binding contract between Customer and Heinold until approved at 222 South Riverside Plaza, Chicago, Illinois 60606 by (i) Heinold's New Accounts Department and (ii) the Regional Manager of the office of Heinold which furnished this Agreement to Customer.

Baldwin's application was forwarded from Heinold's Pierre, South Dakota, office for approval and execution in Chicago. A "Consent to Jurisdiction" clause and an "Authorization To Transfer Funds" appear beneath Baldwin's initial signature on page four. Baldwin signed and agreed to each of these clauses.[1]

■ After the agreement was accepted, Heinold executed Baldwin's orders for commodity futures contracts on the Chicago Merchantile Exchange, the exchange specified on the application. A number of margin calls were made on Baldwin's account and when he failed to maintain an adequate balance in his margin account Heinold closed out his open positions. Paragraph 13 of the agreement provided that in the event Heinold closed out Baldwin's account, the "[c]ustomer shall remain liable for and shall pay to Heinold the amount of any deficiency resulting from any such transactions." Under the Heinold agreement, all customer payments, including the initial maintenance and variation margin requirement, in this case $2,500.00, and all commission charges, premiums, markups, exercise fees, losses resulting from transactions, and interest and service charges on any deficit balances were payable to Heinold at 222 South Riverside Plaza, Chicago, Illinois. Baldwin's transactions with Heinold left a deficit balance in his account and on January 17, 1980, he executed a promissory note to Heinold to cover that deficit balance. Baldwin contends in his brief that after he executed the promissory note he learned that his loss occurred because Heinold's Pierre representative incorrectly placed his sell order. He therefore refused to pay the note.[2]

Heinold filed a complaint in the Circuit Court of Cook County, Illinois, and prayed for judgment against Baldwin for $14,995.00, plus interest, service charges, costs and attorney fees. A copy of the customer application and agreement Baldwin signed, including the consent to jurisdiction, was attached to the complaint and incorporated therein by reference. The Illinois summons and complaint were served on Baldwin on March 31, 1980. Baldwin failed to appear or answer and on February 17, 1981, default judgment was entered against him for $16,202.74 and Heinold's costs. In November of 1981, the Illinois judgment order was filed with the Eighth Judicial Circuit Court in Meade County, South Dakota, pursuant to SDCL 15–16A–1 to 15–16A–10, the Uniform Enforcement of Foreign Judgments Act.

A copy of the Illinois summons and complaint, with Baldwin's application and agreement incorporated, arrived at the Meade County Clerk of Court's Office with the judgment but was apparently misfiled and was never marked as evidence. It is clear, however, that Baldwin's consent to jurisdiction was an issue before the trial court at the motion hearing of April 29, 1982, and that Baldwin admitted at the hearing of July 16, 1984, that he had signed the consent to jurisdiction.

The sole issue Baldwin raises on this appeal is whether the Illinois Circuit Court

1. Page four of the commodities account contract is appended to this opinion.

2. In his motion to set aside judgment, Baldwin asserted that the loss "was incurred because of fraud, and/or negligence of the commodities broker." Fraud in the means whereby a judgment was procured may be a ground for vacating a judgment; fraud between the parties is not a ground for vacating a judgment. *Gifford v. Bowling*, 86 S.D. 615, 200 N.W.2d 379 (1972).

had sufficient subject matter and personal jurisdiction to render a valid judgment against him.

■ When a foreign judgment has been appropriately filed the grounds for vacating it are limited to lack of personal or subject matter jurisdiction of the rendering court, fraud in procurement of the judgment, satisfaction, lack of due process, or other grounds that make the judgment invalid or unenforceable; however, the nature, amount, or other merits of the judgment cannot be relitigated in the state in which enforcement is sought. *Matson v. Matson*, 333 N.W.2d 862 (Minn.1983); *see Kreisler Mfg. v. Homstad Goldsmith, Inc.*, 322 N.W.2d 567 (Minn.1982); *Olson v. England*, 206 Neb. 256, 292 N.W.2d 48 (1980); *Gifford v. Bowling*, 86 S.D. 615, 200 N.W.2d 379 (1972). The Circuit Court of Cook County, Illinois, is a court of general jurisdiction and as such has the authority to hear contract cases. 2 Ill.Stats.Anno. Const. Article VI, Section 9. The Cook County Circuit Court had sufficient subject matter jurisdiction to issue its judgment in *Heinold Commodities, Inc. v. Baldwin* (No. 79 M1 178386).

The question of the Illinois Circuit Court's personal jurisdiction over Baldwin breaks down into two subissues: (1) Whether the Consent to Jurisdiction Baldwin signed was valid and enforceable; and (2) whether the Illinois Circuit Court had personal jurisdiction over Baldwin under the Illinois long-arm statute. Resolution of either question in favor of Heinold renders the Illinois Court's personal jurisdiction sufficient to validate the judgment. First, appended to the Baldwin-Heinold agreement was a "Consent to Jurisdiction" which provided in summary: (1) that all actions arising from the contract be litigated in Illinois courts; (2) that a resident agent be appointed for service of process on Baldwin in Illinois; and (3) that Baldwin waived any right to transfer or change of venue.[3]

Federal courts have held that parties may contractually specify and consent to a state's jurisdiction over legal actions which arise under a contract. *National Equipment Rental v. Szukhent*, 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964). *Colonial Leasing Co. v. Pugh Bros. Garage*, 735 F.2d 380 (9th Cir.1984); *Merrill Lynch, Pierce, Fenner & Smith v. Lecopulos*, 553 F.2d 842 (2nd Cir.1977); *LFC Lessors, Inc. v. Pearson*, 585 F.Supp. 1362 (D.C.Mass. 1984); *see* Restatement of Conflict of Law, § 81, p. 121, Illustration 2 (1934); Restatement of Conflict of Law, Second, § 80, p. 244, comment a (1971). The United States Supreme Court has recognized forum selection clauses as useful devices. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). Although federal court decisions regarding conflicts of law are not binding on state courts, they may be illustrative in the absence of state cases on the issue. *National Equipment Rental, Ltd. v. Miller*, 73 Mich.App. 421, 251 N.W.2d 611 (1977).

■ Four factors determine the reasonableness of consent to jurisdiction clauses: (1) the law which governs the formation and construction of the contract; (2) the residency of the parties; (3) the place of execution and/or performance of the contract; and (4) the location of the parties and witnesses involved in the litigation. *Furbee v. Vantage Press, Inc.*, 464 F.2d 835 (D.C.Cir.1972). Illinois Courts determine the validity, construction and obligations of contracts by the law of the place where the contract is made and performed. *Ehrman v. Cook Elec. Co.*, 468 F.Supp. 98 (D.C.N.D.Ill.1979). The contract in this case specified that it was not accepted or binding until accepted and approved by Heinold in Illinois. Under the contract, Heinold bought and sold commodities for Baldwin through the Chicago Board of Trade in Illinois. The contract was made and performed in Illinois and Illinois law governed the contract. Heinold's principal place of business is Chicago, Illinois; thus, the Illinois courts were most convenient for one of the parties and most of the potential

---

**3.** See Appendix A for the full text of the "Consent to Jurisdiction."

witnesses. Considering the four factors set out above, Heinold's consent to jurisdiction clause appears reasonable and was validly enforced in this case.

■ In 1972, the United States Supreme Court held that forum selection clauses are binding unless the party who seeks to litigate elsewhere shows that enforcement of the clause would be unreasonable, unfair or unjust. *M/S Bremen, supra.* The clause used in this case was set apart from the rest of the agreement with a separate title that read "Consent to Jurisdiction." The clause was in larger print than the main portion of the contract and its language was clear and unambiguous. Baldwin's signature appears on a line immediately beneath the consent to jurisdiction clause. It is clear from the face of the contract that Heinold customers were to sign that portion of the contract only if they consented to the jurisdiction of Illinois state or federal courts and would submit to service of process in Illinois. Heinold's Secretary and Director of Compliance stated in an affidavit, which was apparently furnished to the Illinois Circuit Court, that Heinold customers are not required to sign the consent to jurisdiction provision of the customer agreement and that Heinold frequently opens accounts for customers who sign the customer agreement but do not sign the consent to jurisdiction. There was no disparity of bargaining power between the parties. Baldwin was a power line contractor at the time he signed the agreement and apparently had some experience with business contracts. He knew or should have known what he was signing. Enforcement of Heinold's consent to jurisdiction clause is not unreasonable, unfair or unjust in this case.

The Illinois Courts have followed the federal courts and have allowed parties to consent to the jurisdiction of a particular state's courts. *Bania v. Royal Lahaina Hotel,* 37 Ill.App.3d 661, 347 N.E.2d 106 (1976). The Illinois Circuit Court properly assumed jurisdiction over Baldwin in this case and the judgment rendered is valid in South Dakota.

This court has also held that when parties have agreed to be bound by the law of a specific place and the agreement is reasonable and fair, the law of that place may govern. *Green v. Clinic Masters, Inc.,* 272 N.W.2d 813 (S.D.1978); *see American Service Mutual Ins. Co. v. Bottum,* 371 F.2d 6 (8th Cir.1967); *Briggs v. United Services Life Insurance Company,* 80 S.D. 26, 117 N.W.2d 804 (1962). In *State ex rel. Meierhenry v. Spiegel, Inc.,* 277 N.W.2d 298 (S.D.1979), this court held that, generally, parties to a contract may effectively agree to be bound by the law of a particular state, but that such agreements are subject to invalidation by overriding public policy considerations. *Id.* That case dealt with usury and a contract that exempted Spiegel from South Dakota's usury laws. There are no such public policy issues in this case.

The consent to jurisdiction clause is determinative in this case; thus, we are not required to consider the Illinois Circuit Court's personal jurisdiction over Baldwin under that state's long-arm statute.

We affirm.

All the Justices concur.

WUEST, Circuit Judge, acting as Supreme Court Justice, participating.

APPENDIX

24. Where the context hereof requires, the singular shall import the plural and the masculine shall import the feminine and neuter.

25. This agreement shall not be deemed to be accepted by Heinold or become a binding contract between Customer and Heinold until approved at 222 South Riverside Plaza, Chicago, Illinois 60606 by (i) Heinold's New Accounts Department and (ii) the Regional Manager of the office of Heinold which furnished this Agreement to Customer.

X  7 - 9 - 79
Date

X _____
Customer Signature(s):

X _____

## CONSENT TO JURISDICTION

All actions or proceedings arising directly, indirectly or otherwise in connection with, out of, related to or from this Agreement or any transaction covered hereby shall be litigated at the discretion and election of Heinold Commodities, Inc. ("Heinold"), only in courts whose situs is within the State of Illinois. The undersigned ("Customer") consents and submits to the jurisdiction of any state or federal court located within the State of Illinois, appoints and designates Lee Magnussen (whose address is 222 South Riverside Plaza, Chicago, Illinois 60606), or any other party whom Heinold may from time to time hereafter designate, as Customer's true and lawful attorney-in-fact and duly authorized agent for service of legal process, and agrees that service of such process upon such party shall constitute personal service of such process upon Customer; provided that Heinold shall, within five (5) days after receipt of any such process, forward the same by certified or registered mail, together with all papers affixed thereto, to Customer at Customer's mailing address specified on Customer's Application. Customer waives any right Customer may have to transfer or change the venue of any litigation brought against Customer by Heinold.

X ___7 - 9 - 7 9___   X _____
　　　　　Date　　　　　　　　　　　　　　Customer Signature(s):

　　　　　　　　　　　　　　　X _____

## AUTHORIZATION TO TRANSFER FUNDS

Until further notice in writing, Heinold Commodities, Inc. ("Heinold"), is hereby authorized, at any time and from time to time, without prior notice to the undersigned ("Customer"), to transfer from any account of Customer maintained at Heinold, Heinold Securities, Inc. or Heinold Commodities, Ltd. for Customer to any other such account such excess funds, securities, commodity futures contracts, commodity options and other property as in Heinold's judgment may be required for margin in any such account, or to reduce any debit balance or to reduce or satisfy any deficits in such other account, provided that any such transfer shall comply with the rules and regulations of the Commodity Futures Trading Commission with respect to customer accounts regulated by the Commodity Exchange Act. Within a reasonable time after making any such transfer, Heinold will confirm the same in writing to the undersigned.

X ___7 - 9 - 7 9___   X _____
　　　　　Date　　　　　　　　　　　　　　Customer Signature(s).

　　　　　　　　　　　　　　　X _____

FOR INTERNAL USE ONLY

Approved by: _____   _____
　New Accounts Department　　　　　　　　　Regional Manager

Account No. _____ 222 South Riverside Plaza, Chicago, Illinois 60606