In the Matter of the ESTATE OF John
ALTHEN, Deceased.

Nos. 15847, 15872.

Supreme Court of South Dakota.

Argued Jan. 11, 1988.

Decided Sept. 28, 1988.

John L. Morgan of Morgan, Theeler,
Cogley & Padrnos, Mitchell, for appellant
Estate of Bess McQuade.

Douglas R. Bleeker, Mitchell, for appel-
lee Florence Gjesdal.

E. Steeves Smith of Tinan, Smith & Tay-
lor, Mitchell, for appellee Commercial Trust
& Sav. Bank.

TSCHETTER, Circuit Judge.

This is an appeal from a final decree of
distribution of trial court. Trial court had
approved prior accountings of executors.
Trial court was requested to set aside the
approval of first accounting of executors
and refused to do so. We affirm the trial
court on the issue of the finality of the first
accounting. We remand for specific find-
ings of fact regarding fraud of attorney on
matters relating to final accounting.

FACTS

John Althen (decedent), a bachelor, died
on January 24, 1976. The decedent's Last
Will and Testament, prepared by attorney
Douglas R. Bleeker (Bleeker), was duly
admitted to probate. The decedent's niece,
Florence Althen Gjesdal (Gjesdal), and the
Commercial Trust and Savings Bank of
Mitchell, South Dakota, (bank) were ap-
pointed as the executors. They retained
Bleeker as attorney. The final evaluation
of the decedent's estate was $1,517,436.00.
The residuary heirs, legatees and devisees
of decedent's estate were Casper Althen,
Gjesdal, Helen King, Charles R. Schultz
and Bess Coffee McQuade (McQuade). Al-
then was to receive 80% of the estate, while
Gjesdal, King, Schultz and McQuade were
each to receive 5%. McQuade is now de-
ceased and the executor of her estate is a
professional corporate trust department in
Duluth, Minnesota.

On July 6, 1982, the executors' first ac-
counting was presented to the trial court
and heirs for approval. Notice was sent to
each of the heirs including the trustee of
the McQuade Estate (appellant). An order

approving the initial accounting was signed on July 30, 1982. No objection had been made to the first accounting. No appeal was taken from the approval of the order. In the order approving the first accounting, attorney's fees and expenses of $57,491.00 and executor fees of $67,282.00 were approved.

Four years later, the executors filed for the final account and report and a petition for final distribution on August 4, 1986. McQuade filed objections to the final account. Some of the objections filed by McQuade dealt with matters that had been included in the executors' first approved accounting. A hearing was held with respect to the final accounting, and the trial court allowed McQuade to go into the matters contained in the first accounting. An audit was conducted on the executors' accounting and Bleeker's trust account. The audit disclosed several conflicting, unexplained receipts and disbursements. The audit also reflected some commingling of funds between the estate and the Bleeker trust account, certain municipal bonds and treasury bills which had not been included in the first accounting, and other mistakes regarding the accounting.

The trial court, in entering its findings of fact and conclusions of law noted these deficiencies and also noted that there were no objections raised at the hearing on the first accounting. The trial court approved the final accounting of the executors subject to several exceptions. Finally, the trial court did not determine that Bleeker was guilty of fraud or deceit.

## DECISION

■ Appellant claims the trial court erred by not finding that Bleeker was guilty of fraud and deceit. The trial court's finding of fact shall not be set aside unless clearly erroneous. A finding is clearly erroneous when upon reviewing the entire evidence, we are left with a definite and firm conviction that the trial court has erred. *Matter of Estate of Gosmire*, 331 N.W.2d 562 (S.D.1983); *Estate of Nelson*, 330 N.W.2d 151 (S.D.1983); *Matter of Estate of Pierce*, 299 N.W.2d 816 (S.D.1980).

Due regard is afforded to the trial court's opportunity to judge the credibility of witnesses. *Matter of Estate of Gosmire, supra; People in Interest of P.M.*, 299 N.W. 2d 803 (S.D. 1980).

It should be noted that the parties only presented two of the five transcripts of the hearing conducted. However, after reviewing the record presented to this court, we are not convinced that the trial court was clearly erroneous. The trial judge had ample opportunity to observe Bleeker while testifying. Bleeker attempted to explain the discrepancies in the audit to the trial court. Although Bleeker's handling of the estate was questionable at best, his inability to properly handle the estate, in the trial court's opinion, apparently does not rise to the level of fraud and deceit. Therefore, we affirm the trial court on this issue.

Appellant next contends that trial court erred by failing to reopen the first accounting. SDCL 30–25–33 provides:

> The *settlement of the account and the allowance thereof by the court,* or upon appeal, *is conclusive against all persons in any way interested in the estate,* saving, however, to all persons laboring under any legal disability, their right to move for cause to reopen and examine the account or to proceed by action against the executor or administrator, either individually or upon his bond, at any time before final distribution; and in any action brought by any such person, the *allowance and settlement of such account is prima facie evidence of its correctness.* (emphasis added).

■ If the parties seeking to reopen the estate are not under legal disability, then the accounting is final. *In re Nelson's Estate*, 26 S.D. 615, 129 N.W. 113 (S.D. 1910). Further, an intermediate or first account of an executor or administrator from which no appeal is taken is binding, and cannot be impeached upon the final accounting. *Melstrom v. Terry*, 170 Minn. 338, 212 N.W. 902 (1927). This would be the situation even if the accounting were erroneous in some respects. *White v. White*, 76 S.D. 503, 81 N.W.2d 606 (S.D. 1957).

The record clearly reflects that the estate of McQuade was given notice of hearing on the first accounting. No objections were filed nor appeal taken from that accounting. Therefore, the accounting would be considered conclusive against the McQuade estate.

Appellant contends that a court may rescind an order entered when it is tainted by fraud. SDCL 15–6–60(b); *Gifford v. Bowling*, 200 N.W.2d 379 (S.D.1972). Four years passed between accounting one and final. No objection was made. No motion to set aside on the grounds of fraud or mistake was made. No appeal was taken. Under these circumstances we cannot find the trial court to be clearly erroneous in giving credence to the order approving first account. The trial court did not err in refusing to rescind the order allowing the first accounting.

▉ There are, however, issues of fraud which were raised in the objections to the final account. The findings are silent as to fraud or absence thereof in the four year interim period between accounting number one and final. The circumstances surrounding the "missing $5,000.00 bond" are perplexing at best. According to all the evidence presented this missing bond had to have had a 1991 maturity date. The $5,000.00 bond returned by attorney in 1986 had a maturity date of 2006. This fact coupled with other troublesome anomalies requires an inquiry into, and specific findings regarding fraud.

We remand for rehearing by the trial court and issuance of findings on the existence or absence of fraud and its effect during the interim period between the two accountings.

HENDERSON, Acting C.J., and SABERS, J., concur.

MILLER, J., and McKEEVER, Circuit Judge, concur in part and dissent in part.

TSCHETTER, Circuit Court Judge, sitting for WUEST, C.J., disqualified.

McKEEVER, Circuit Court Judge, sitting for MORGAN, J., disqualified.

MILLER, Justice (concurring in part, dissenting in part).

I concur with the majority holding that this case must be remanded on the issue of fraud. However, I dissent from that part of the majority opinion which limits the inquiry to the interim period between the two accountings.[1]

The majority correctly observes that SDCL 30–25–33 makes an order approving an accounting "conclusive" as against persons interested in an estate, except as to those persons "laboring under any legal disability" in which event the allowance and settlement of the account is merely "prima facie evidence of its correctness."

The majority, however, minimizes, discounts, or gives slight shrift to appellant's contention that under SDCL 15–6–60(b)(3) the court may relieve a party from a final order which was obtained by fraud.[2]

SDCL 15–6–60(b) provides:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

. . . .

(3) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

. . . .

Section 15–6–60 does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant

---

**1.** Note that over six years expired between the time the petition for probate of will was filed and the filing of the co-executors' first accounting. The second *and final* accounting was filed ten and one-half years after the original petition for probate of will. Under SDCL 30–25–11, it is required that an accounting be submitted within one year after decedent's death (here the petition for probate of will was filed within a month of death) and annually thereafter, or at any time when required by the court.

**2.** *See* SDCL 20–10–1 and –2 for the appropriate definitions.

relief to a defendant not actually personally notified as provided by statute *or to set aside a judgment for fraud upon the court.*

The usual one year time limitation for bringing an action under Rule 60(b)(3) would not be applicable here since the claimed fraud would be, in my opinion, a fraud upon the court, considering the court's special responsibilities and functions in the administration of estates.

This court discussed at length what constitutes a fraud on the court in *Gifford v. Bowling,* 86 S.D. 615, 625, 200 N.W.2d 379, 384 (1972). There, we said:

" 'Fraud upon the court" should ... embrace only that species of fraud which does, or attempts to, defile the court itself, or is a fraud *perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner* its impartial task of adjudging cases that are presented for adjudication....'

....

... '... "[i]n order to set aside a judgment or order because of fraud upon the court under Rule 60(b), * * * it is necessary to show an unconscionable plan or scheme which is designed to improperly influence the court in its decision." Courts have found fraud upon the court only where there has been the most egregious conduct involving a corruption of the judicial process itself. Examples are ... *the involvement of an attorney (an officer of the court) in the perpetration of fraud....*' *(Emphasis added.)*

It must be remembered that in its findings of fact the trial court specifically found:

5. The accountin*gs* filed by the co-executors contained conflicting and frequently unexplained figures, and there was inadequate identification of the sources of receipts of income and the disposition of disbursements throughout *both* accountings. (Emphasis added.)

6. Douglas R. Bleeker, attorney for the co-executors, throughout the administration of the estate maintained a trust account called the Bleeker Trust and during the years 1978 through 1982 the following amounts were shown in the executor's (sic) accountings as income received from the Bleeker Trust, without any accompanying explanation of the nature or source of the money: $5000 in 1978, $36,281.76 in 1979, $20,000 in 1980, $24,262.50 in 1981, and $18,307.50 in 1982.

7. During the same period the following expenses were shown as paid to the Bleeker Law Firm without any accompanying explanation of the services provided: $5000 in 1978, $10,000 in 1979, $20,000 in 1980, and $18,000 in 1981.

8. Examples of inadequate reporting in said accountings include: For the year 1981, an expense is listed in the first accounting as 'Error—$65,000', without further explanation; certain expenses of attorney Bleeker for the year 1982 were reported and claimed in the first accounting but were not even mentioned in the final accounting for the year 1982; for the year 1983 expenses were charged for loss on the sale of treasury notes, but no account was made for the proceeds of said notes; again in 1984, there was a loss shown for the sale of treasury notes without accounting for the proceeds of said notes.

9. Douglas R. Bleeker, as the attorney for the executors, was *responsible for the actual preparation of the accountings,* and as to all transactions through the Bleeker Trust, he was responsible for the information therein. (Emphasis added.)

....

11. [The CPA] retained by the executor ... to audit the accountings and books and records of the executors and the Bleeker Trust, reported that executor's (sic) fees of $41,222 had been *approved in the first accounting,* further demonstrating the inaccuracies of the executor's (sic) accountings. (Emphasis added.)

12. The executor's (sic) fees approved in the first accounting greatly exceeded that allowed by statute ...

13. [Because of the erroneous computation of executors fees on the first ac-

counting it resulted] ... in an *over-payment of $41,821.08.* (Emphasis added.)

14. In approving the first accounting [the circuit court] *approved payment of at least $53,000* for attorney's fees to Douglas R. Bleeker; however, [the CPA's] audit indicated that the *amount paid was $58,000.* (Emphasis added.)

15. Mr. Bleeker claimed attorney's fees due for services rendered the decedent prior to death; however, he filed no creditor's claim against the estate, but instead withdrew the amount from the Bleeker Trust sometime after the time for filing claims against the estate had expired.

16. [Co-executor bank] ... was first advised on October 29, 1981 that Mr. Bleeker had paid himself from the Bleeker Trust account a sum of over $43,000 for attorney's fees during the preceding two years.

17. During the month of September, 1986, after the [appellant] had filed its objections to the executor's (sic) final account and petition for distribution, including a demand for an audit of the Bleeker Trust, Douglas R. Bleeker paid over to the executors approximately $70,-000 in estate funds which had not been included or mentioned in the accountings of the Bleeker Trust account furnished by him for the *first* or final accountings. (Emphasis added.)

18. Included in the amount paid by Douglas R. Bleeker to the executors were: a $5000 municipal bond; a check drawn on the Bleeker Trust account in the amount of $15,000 representing the proceeds of a United States Treasury Bill which matured January 8, 1976, and which was deposited in the Bleeker Trust account on January 14, 1976; a personal check drawn on Bleeker's *personal account* in the amount of $30,143.10, representing accrued but unpaid interest on estate property held in the Bleeker Trust; $14,893 also representing accrued but unpaid interest on estate property held in the Bleeker Trust; and $8650 of remaining funds held in the Bleeker Trust. (Emphasis added.)

19. According to [the CPA], his audit of the payments made by attorney Bleeker as stated above constituted an overpayment of $5236 of what was actually owed to the estate.

20. Assets of the estate ... were held in trust by attorney Douglas Bleeker and were not properly and adequately identified.

21. Attorney Bleeker commingled his own funds with John Althen's and other clients' funds in said Bleeker Trust account, and he withdrew funds from that trust account for his own use and benefit without authorization to do so.

22. Certain securities held by attorney Bleeker were not properly labeled and secured as property belonging to the estate of John Althen and *were not accounted for in the first* or final accountings of the co-executors, particularly that part thereof relating to the Bleeker Trust account prepared by Mr. Bleeker. (Emphasis added.)

23. Said securities were not accounted for, and a substantial amount of interest income on assets held in the Bleeker Trust were not accounted for, until objections to the final accounting were raised, including a demand for an audit of the Bleeker Trust.

Considering the foregoing serious and significant findings, and the claims that could flow therefrom, the trial court on remand should be able to inquire into Bleeker's conduct in the preparation and filing of the first accounting. SDCL 15–6–60(b). If it determines that a fraud was committed "upon the court" it should be entitled, under the auspices of Rule 60(b) to set aside its previous order approving the first accounting and fashion whatever remedy is appropriate. *Wooster v. Wooster,* 399 N.W.2d 330 (S.D.1987); *Gifford, supra.*

I am authorized to state that McKEEVER, Circuit Judge, joins in this concurrence in part and dissent in part.